RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0071p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

Nos. 14-6543/6544

JASON CURTIS BROWN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 0:14-cr-00021-1—David L. Bunning, District Judge.

Argued: December 3, 2015

Decided and Filed: March 24, 2016

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Luke Schamel, UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, for Appellant. Neeraj K. Gupta, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Neeraj K. Gupta, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

CLAY, J., delivered the opinion of the court in which MOORE, J., joined, and GILMAN, J., joined in part. GILMAN, J. (pp. 40–46), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

CLAY, Circuit Judge.  Following a jury trial, Defendant Jason Brown was convicted of four counts of distributing heroin and crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and sentenced to 288 months' imprisonment.  On appeal, Brown argues that: (1) the district court violated the Speedy Trial Act (the "STA" or "Act"), 18 U.S.C. § 3161 *et seq.*,[1] when it initiated his trial with the intent of immediately recessing after conducting voir dire and empaneling a jury; (2) his trial attorney rendered ineffective assistance of counsel because he failed to move to dismiss the indictment based on this alleged violation of the STA; and (3) his due process rights were violated when he was excluded from participating in certain pretrial scheduling conferences between defense counsel, government counsel, and the district court.  Brown also contends that if this Court vacates his convictions at trial based on the alleged STA violation, we should also vacate the district court's revocation of his supervised release, which resulted in a separate, 24-month sentence to run consecutively with his 288-month sentence.  For the following reasons, we **VACATE** Brown's convictions at trial based on the Speedy Trial Act violation below and **REMAND** to the district court for a determination as to whether the indictment should be dismissed with or without prejudice based on the factors articulated in the Act, 18 U.S.C. § 3162(a)(2).  We **AFFIRM** the district court's revocation of Brown's supervised release.

**BACKGROUND**

On December 12, 2013, Brown was indicted on four counts of distributing heroin and crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  Brown was arraigned, entered his initial appearance, and pleaded not guilty before a magistrate judge on February 25, 2014.  A jury trial was set for April 28, 2014.

---

[1]Although a defendant may also raise a speedy trial rights claim under the Sixth Amendment of the United States Constitution, *see United States v. Young*, 657 F.3d 408, 413–14 (6th Cir. 2011), the parties did not brief this issue and we do not address it.

On April 10, 2014, Brown's court-appointed counsel moved to withdraw at Brown's request.  Four days later, the district court granted the motion to withdraw and vacated the April trial date, scheduling a new trial date for June 9, 2014.

Trial was delayed a second time by virtue of Brown's May 8, 2014 motion for a psychiatric examination, wherein Brown asserted that he may have been insane at the time of the alleged drug offenses.  Brown also orally moved for a competency examination.  In an order issued on May 13, 2014, the court granted both of Brown's motions, vacated the June 9 trial date, and ordered the government to file a status report to assure correct calculations under the Speedy Trial Act.  The same day, the court issued a separate order stating that the period between Brown's filing of the May 8 motion and the completion of Brown's psychiatric and competency examinations would be excluded from the Speedy Trial Act's 70-day time limit pursuant to 18 U.S.C. § 3161(h)(1)(A) and 18 U.S.C. § 3161(h)(1)(D).  Following Brown's examinations, as well as a competency hearing held on August 19, the district court found that Brown was competent to stand trial and set trial for September 8, 2014.

On September 3, 2014, five days before the scheduled trial date, the government filed a motion to continue the trial.  In its motion, the government indicated that it intended to call United States Probation Officer Steven Phillips as a witness for the purposes of testifying as to two important issues: identifying Brown and discussing Brown's flight after he learned of the warrants against him based on the counts in the indictment.  According to the government, Phillips was planning to participate in two separate training events during the week of the trial, and these trainings had been scheduled long before the court reset the trial date for September 8.  On this basis, the government requested a brief continuance to the next available trial date and requested that the court discuss possible dates with counsel over the telephone.

Brown, who was in custody, did not attend the same-day teleconference between defense counsel, government counsel, and the court.  At this initial teleconference, government counsel informed the court that Officer Phillips would be instructing two out-of-state trainings scheduled during the week of trial.  Although government counsel was not certain about the exact dates of Phillips' trainings, he believed that they would take place on the Monday (September 8) and Wednesday (September 10) of that week.

At the outset, the court noted that it had trials scheduled for September 15, September 22, and September 29, 2014, and opined that it might be able to accommodate Phillips' trainings by permitting the government to call its witnesses out of order. Government counsel said that he had discussed this option with Phillips, but expressed doubt that such an arrangement would be workable, indicating that Phillips' training schedule took priority with his supervisors and that Phillips was therefore unsure whether he would be "allowed to attend" the trial. Government counsel also admitted, "Some of this is my fault, Judge. I missed a week of prep. I was out for a week after [the trial was rescheduled] with a son in the hospital, and that kind of put me late getting ahold of Mr. Phillips," an "important" government witness. (R. 87, Tr. of Sept. 3 Teleconf., PageID# 328).

When prompted by the court, defense counsel conceded that he had not spoken with Brown about the government's motion for a continuance, but stated that "we're still within the speedy trial limit," "things happen," and "sometimes we don't have any control over [witnesses]." (*Id.* at 329). Defense counsel also agreed to make himself available for trial the following week, September 15, indicating that his state-court matter scheduled for September 16 could probably be continued because his client was not in custody. However, government counsel stated that his recently-hospitalized son was having surgery on September 15 and that he was "hoping to attend." (*Id.* at 330).

At this point, the district court asserted that it did not think it could move the September 8 trial date because the court had trials scheduled for, and government counsel was unavailable on, September 15. The court also stated that it had not yet "looked at the clock for the speedy trial purposes," and that it did not have the calculations for excludable time under the Act at its "beck and call." (*Id.* at 330).

Without a discernable pause, at least on review of the cold record, the court then opined that a possible solution would be selecting a jury on September 8, and then taking a recess before reconvening for a two-day trial on September 17. The court reasoned that although such a plan was "not the most advantageous thing to do," it had several benefits, including (1) avoiding a situation wherein defense counsel made concessions on behalf of Brown without consulting him due to his absence from the teleconference, (2) permitting Officer Phillips to appear as a witness

at trial, and (3) accommodating the government's other witnesses who would have otherwise flown in early for trial. (*Id.* at 331). However, upon learning that government counsel did not know how long his son's surgery would take, the court opined, "Frankly, the easiest thing to do here would be to deny the motion, keep the case set, and just tell Mr. Phillips [he's] going to have to miss one of those trainings, not two." (*Id.* at 331–32). The court also stated, "I'm just trying to be fair to everyone here." (*Id.* at 332). When the court asked whether the government would be prepared to try the case on September 8 if the motion for a continuance was denied, government counsel replied, "We'll try the case the day the case is called for trial, whether we have witnesses, whether we don't have witnesses . . . . But that's the point of the matter . . . we'll be there to try the case when the case has to be tried. I was attempting to assist [Officer Phillips]." (*Id.* at 332–33).

Shortly thereafter, the court went off the record. After going back on the record, the court asked both government and defense counsel whether they could begin trial on September 22. They answered in the affirmative. Accordingly, the court orally granted the government's motion and continued the trial date by 14 days, from September 8 to September 22.

At the time the court granted the motion for a continuance, defense counsel indicated that he did not think that Brown would object to the continuance, but asserted that he would need to talk to Brown to be certain. In response, the court instructed defense counsel to "file something of record" the following day once he had spoken with his client.

The next day, Brown filed a written response opposing the government's motion for a continuance. In his opposition, Brown argued that the government had known of Phillips since February 2013 and therefore had "plenty of time to investigate" and determine the "necessity and materiality" of this witness and his testimony. (R. 46, Notice of Filing, PageID# 94; *see also* R. 86, Tr. of Sept. 4 Teleconf., PageID# 319). Brown also asserted that a continuance would deny him his speedy trial rights and effectively ratify the government's lack of due diligence. At the September 4, 2014 teleconference between defense counsel, government counsel, and the court, from which Brown was also absent, defense counsel informed the court that Brown objected to "any continuance" of the trial. (R. 86, Tr. of Sept. 4 Teleconf., PageID# 319).

The court observed that Brown's objection to the continuance left it in a "quandary" because it had granted the government's motion the previous day. (*Id.* at 320). The court also noted that the 70-day deadline under the STA was September 15, 2014—the same day government counsel's son was scheduled to have surgery. The court stated:

> There's [sic] a couple of ways to handle this. I can deny the motion [for a continuance], despite the fact that I had initially orally granted it, and require that everybody start on Monday[, September 8] and we'll go until we're finished. Or I can start on Monday, pick a jury, swear the jury and take a recess to enable . . . [Officer Phillips], who I deemed to be an essential witness[, to appear at trial].

(*Id.* at 320). When prompted, government counsel responded to the court's proposed plan of action by stating, "[W]e would be willing to pick the jury on Monday[, September 8], and we'd like to return on [September 22] for presentation of proof. That takes care of that problem, and voir dire I was ready for two weeks ago." (*Id.* at 321). The court then asked defense counsel if he objected to such a procedure, to which defense counsel responded, "No, I can't object to that." (*Id.*). During this conversation, and in response to the court's prompting, defense counsel indicated that he had a scheduling conflict on September 15.[2]

After both government and defense counsel agreed to this arrangement, the district court asserted:

> That's what we're going to do, then, because that accommodates both [defense counsel] and [Brown]. [Defense counsel's] conflict with the 15th is ameliorated by coming back on the 22nd, and we also allow [the government's] witness, who had a conflict at the time originally scheduled, to be accommodated.
> [Addressing counsel] So, without objection, as long as you don't object to that procedure, and you don't, that's how we'll handle it.

(*Id.* at 321). The court also stated, "What we'll do on Monday[, September 8], we'll start at 2:00, we'll pick a jury, we'll have voir dire, select 14 [jurors], and then have them come back on the 22nd [for preliminary instructions and opening statements]." (*Id.* at 322). When the court asked defense counsel, "Just to make sure, your client does not object to that?", counsel responded,

---

[2]Although this purported conflict was not discussed in detail at the September 4 teleconference, the record suggests that defense counsel was referring to his state court matter set to begin on September 16—wherein his client was not in custody—that he had mentioned during the September 3 teleconference.

"There's no way he could object," adding, "I mean, that's within the 70 days, and there's no way." (*Id.*).

Accordingly, the district court denied the government's motion for a continuance, and proceeded with the alternative plan: conducting voir dire and empaneling a jury on September 8, taking a two-week recess, and then reconvening for trial on September 22. For the remainder of this opinion, we shall refer to this course of action as the "start-and-stop plan."

During the September 8 final pretrial conference, which was held immediately before voir dire and attended by Brown and counsel for both sides, the court stated:

> I just wanted to verify something. As I indicated last week, because the defendant has requested that he have his speedy trial rights under 18, U.S. Code, Section 3161, we're picking a jury today. And then without objection, we'll recess until the 22nd, at which time we'll come back with the jurors. I will seat two alternates instead of one because of the delay in case something happens in the interim period.

(R. 88, Tr. of Final Pretrial Conf., PageID# 337). The court added, "I was going to set this trial for next week. I think the 70th day runs [September] 14th, as I recall, after taking the excludable time, but I understand both counsel will be unavailable next week." (*Id.*) When the court asked government and defense counsel, "You had a conflict, and you had a conflict as well?", both attorneys answered in the affirmative. (*Id.* at 337–38). The court opined, "So that time [between September 15 and September 22] would be otherwise excludable because of the unavailability of the attorneys. I wanted to put that on the record." (*Id.* at 338).

Brown, however, objected to "starting and recessing" the trial. (*Id.* at 339). More specifically, when the court asked if there was anything further defense counsel needed to discuss, counsel replied, "Judge, he wants to bring up, he does object to starting and recessing. [Brown] does." (*Id.*). The conversation between the court and Brown proceeded as follows:

> THE COURT: Do you want to proceed *pro se*, without your lawyer?
> BROWN: No, sir.
> THE COURT: He has a conflict. What can I do?
> BROWN: I wasn't aware of the conflict until just now. What I read in the motion and the orders I obtained the other day, when I wasn't present at the hearing, is that you basically had a continuance hearing, and then you denied the motion and then granted a recess.

> THE COURT: Well, I haven't granted the recess yet.
>
> BROWN: In the order, it said you did. I didn't know what was going on.
>
> THE COURT: I'll tell you what's going on. When I reset this trial, I reset it without consulting the attorneys about their witnesses. Once I was advised there was a conflict, I set it on a date that everybody was available.
>
> Before I entered the order, your attorney indicated that you objected to the date so I went ahead and denied the motion but indicated in the order that we would select a jury today and not call any witnesses before the break. I think by only selecting a jury, having them sworn in, the time frame stops, as a matter of law. That 70th day is after today, so the 70th day stops.
>
> [Addressing defense counsel] How is [Brown] prejudiced by that, Mr. Curtis?[3]
>
> BROWN: I—
>
> THE COURT: No. You have a lawyer. It's in your best interest to speak through your lawyer.

(*Id.* at 339–40). After conferring with Brown, defense counsel stated, "Judge, there's no way we can be prejudiced. [Brown's] whole issue has always been about the availability of Mr. Phillips." (*Id.* at 341).

Ultimately, the court concluded:

> [Brown's] objection to the process the Court has set in place is overruled. I don't see any prejudice at all. I think at the time the Court set this original trial date for today, neither party had had a chance to talk to their prospective witnesses as to whether or not they would be available. The Court selected the date of the 22nd because the lawyers were available.
>
> [Brown] then consulted with his lawyer, who then indicated that he objected. I would have set [the trial] for next week, but the lawyers were unavailable for next week so I've decided to do this process. We're not going to have the jury forget what they heard in opening statement or with the first couple of witnesses because I'm going to select the jury today and then we're going ahead and recessing two weeks, bringing the[ jurors] back on the 22nd to start with opening statements and go[ing] right into the direct examination. So the objection will be overruled.

---

[3]We reject the district court's insinuation that Brown needed to show "prejudice" in order to prevail on his STA claim. The Act's mandatory language provides that "[i]f a defendant is not brought to trial within the time limit . . . , the . . . indictment *shall* be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added). This provision, § 3162, explicitly allocates burdens of proof, and its only reference to "prejudice" is with regard to the factors courts shall consider in determining whether to dismiss an indictment with or without prejudice once it finds that an STA violation has occurred. *Id.* Congress enacted the STA to "put teeth into the [Sixth Amendment's] speedy trial guarantee. The scheme operates like a statute of limitations. The guarantee is violated if the prosecution oversteps the time limits of the act. Under the Speedy Trial Act there is no need to measure prejudice to the defendant." *United States v. Mehrmanesh*, 652 F.2d 766, 769 (9th Cir. 1981).

So Madam Clerk, you can just reflect that [Brown's] oral objection to recessing the trial will be overruled.

(*Id.* at 342–43). When asked whether he had anything else to "bring up" before the prospective jurors were brought into the courtroom, defense counsel replied, "No, Your Honor." (*Id.* at 343).

The parties then proceeded with voir dire. Once fourteen jurors were selected, the jury panel was sworn and instructed to return two weeks later for trial.

In the criminal minutes for that day, the district court noted that "Brown's oral objection to the recess of the trial until September 22, 2014 [wa]s [o]verruled." (R. 48, Crim. Mins., PageID# 102). In an order issued September 10, 2014, the court amended the criminal minutes from September 8 "to reflect that the time period between September 15, 2014[,] and September 22, 2014, totaling seven (7) days, shall be excluded from the provisions of the Speedy Trial Act as both counsel are unavailable that week." (R. 49, Order, PageID# 103).

Opening statements for Brown's two-day trial commenced on September 22. On the second day of trial, the jury found Brown guilty on each of the four drug distribution counts charged in the indictment. Thereafter, the court set a sentencing hearing for December 2014.

On December 1, following trial but prior to sentencing, Brown's supervised release matter, which was originally filed in the Southern District of West Virginia, was transferred to the district court. In an order issued December 2, the court set Brown's supervised release hearing for the same day as his sentencing hearing: December 9. At the sentencing hearing, the court imposed a 24-month sentence based on Brown's violation of the terms of his supervised release, to run consecutively with the 288-month sentence imposed for his convictions at trial.[4]

On December 10, the district court issued judgments as to each of Brown's sentences. Brown timely appealed both judgments.

---

[4]Brown's 288-month sentence was in the middle of the guidelines range based on the court's finding that Brown was a career offender, a determination that Brown does not challenge in this appeal.

## DISCUSSION

### Standard of Review

We review a district court's legal conclusions regarding an alleged STA violation *de novo* and its factual findings for clear error. *United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994).

### Analysis

### Overview of the STA Issues Raised in this Appeal

The Speedy Trial Act requires that in any case in which the defendant has not entered a guilty plea, trial must commence within 70 days of the filing of the indictment or the date of defendant's arraignment, whichever occurs later.   18 U.S.C. § 3161(c)(1); *United States v. Tinklenberg*, 563 U.S. 647, 131 S. Ct. 2007, 2010 (2011).   The Act also includes a list of delays that must be excluded from the 70-day period.   18 U.S.C. § 3161(h); *United States v. Sobh*, 571 F.3d 600, 602 (6th Cir. 2009).   If the defendant is not brought to trial within the 70-day limit, and the Act does not exclude the delays, the district court must dismiss the case, with or without prejudice, on the defendant's motion.   18 U.S.C. § 3162(a)(2); *United States v. Myers*, 666 F.3d 402, 404 (6th Cir. 2012).   A defendant's failure to move for dismissal prior to trial, however, constitutes a waiver of the right to dismissal.   18 U.S.C. § 3162(a)(2).

In this case, the record clearly demonstrates that Brown objected to "any continuance" of trial, including the district court's start-and-stop plan, as violations of his rights under the Speedy Trial Act.   Brown articulated these objections on two occasions.   First, he opposed the government's motion for a continuance in his written opposition filed September 4, 2014.   Second, Brown orally objected to the start-and-stop plan—and the district court defended the plan as non-violative of the STA—at the final pretrial hearing held on September 8, 2014.

Notably, the circumstances surrounding Brown's objections to the alleged STA violation present two unique issues related to the form and timing of a motion filed pursuant to § 3162(a)(2).   With regard to form, despite his objections, Brown never filed a formal, written motion to dismiss the four-count indictment against him.   Although other circuits have addressed

the question of whether a defendant's oral objection may act as a motion to dismiss under § 3162(a)(2), this Circuit has no binding authority on the matter. In terms of timing, both of Brown's objections were raised *before* the 70-day deadline, which was September 15, 2014. In *United States v. Sherer*, 770 F.3d 407, 410–11 (6th Cir. 2014), however, this Court held that a § 3161(a)(2) motion cannot properly allege a violation of the Act unless it is filed *after* the expiration of the 70-day deadline because the STA violation has not yet occurred. Thus, in resolving Brown's STA claim, we must analyze three distinct but related issues: (1) whether the district court's start-and-stop plan violated the Speedy Trial Act; (2) whether Brown's oral (rather than written) objections to the start-and-stop plan, made at the final pretrial conference, satisfied 18 U.S.C. § 3162(a)(2)'s motion requirement; and (3) whether this Court's decision in *Sherer* precluded Brown from effectively moving to dismiss the indictment at the pretrial conference, which was held seven days before the 70-day deadline.

## The Speedy Trial Act Claim

**A.    The District Court's Start-and-Stop Plan Violated the STA**

As indicated, the Speedy Trial Act "requires dismissal of a criminal case, with or without prejudice, if the defendant is not tried [70] days after . . . the date he first appears in court," *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996), and the time exceeding 70 days is not excludable, *Myers*, 666 F.3d at 404. Calculating whether the Act's 70-day deadline has passed is a "simple matter of producing a calendar and showing that more than seventy days have passed since the indictment (or first appearance) and trial has yet to begin." *Jenkins*, 92 F.3d at 438. In the instant case, 201 calendar days passed between Brown's February 25, 2014 arraignment and September 15, 2014—the date the district court identified as the 70-day deadline—131 of which were excludable under various provisions of the Act.**[5]** The parties commenced voir dire one

---

**[5]**Neither party disputes the district court's conclusion that the 70-day deadline was September 15, 2014. Although the district court did not explicitly state how it calculated this deadline in the record, it appears to be derived from: (1) counting the days between Brown's February 25, 2014 arraignment, not including the date of arraignment itself, *see Sobh*, 571 F.3d at 602, and the April 10, 2014 motion to withdraw; (2) excluding the days between the April 10 motion to withdraw and the May 8, 2014 motion for a psychiatric examination; and (3) excluding the days between the May 8 motion for a psychiatric exam and the court's August 19, 2014 order finding Brown competent to stand trial. In total, 201 calendar days passed between Brown's February 25 arraignment and September 15. The STA clock ran for 43 days between February 25 and April 10. The 131 days between April 10 and August 19—which encompassed defense counsel's motion to withdraw and the appointment

week before the 70 days elapsed, on September 8, 2014.  The same day, Brown orally objected to the district court's start-and-stop plan on the grounds that it violated his speedy trial rights.

For the purposes of the Speedy Trial Act, trial generally commences when voir dire begins.  *United States v. Young*, 657 F.3d 408, 416 (6th Cir. 2011) (citing *United States v. Crane*, 776 F.2d 600, 603 (6th Cir. 1985)).  Several of our sister circuits follow the same approach.  *See, e.g.*, *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997), *overruled on other grounds by Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Gov't of Virgin Islands v. Duberry*, 923 F.2d 317, 320 (3d Cir. 1991); *United States v. Fox*, 788 F.2d 905, 908 (2d Cir. 1986); *United States v. Howell*, 719 F.2d 1258, 1262 (5th Cir. 1983); *United States v. Gonzalez*, 671 F.2d 441, 443 (11th Cir. 1982)).  However, although trial generally commences when voir dire begins, appellate courts have consistently condemned attempts by the district courts to "evade the spirit of the Act by conducting voir dire within the statutory time limits and then ordering a prolonged recess with [the] intent to pay mere 'lip service' to the Act's requirements."  *United States v. Scaife*, 749 F.2d 338, 343 (6th Cir. 1984) (citing *United States v. Richmond*, 735 F.2d 208, 211 (6th Cir. 1984)); *see, e.g.*, *United States v. Isaacson*, 752 F.3d 1291, 1302 (11th Cir. 2014) (warning district courts not to interpret the court's holding "as a license to evade the Act's spirit" or "merely pay the Act lip service" (quoting *Gonzalez*, 671 F.2d at 444) (quotation marks omitted)); *Duberry*, 923 F.2d at 320 (stating that "if a district court attempts to evade the spirit of the Act by conducting voir dire within the 70-day period and then ordering a prolonged recess[,] it may violate the Act" (citation omitted)); *United States v. Stayton*, 791 F.2d 17, 18 (2d Cir. 1986) (vacating and remanding with instructions that the indictment be dismissed where the 23-month delay between voir dire and opening statements "derogated the spirit and intent of the Speedy Trial Act").

The parties' briefs cite two seminal STA cases from this Circuit: *United States v. Crane*, 776 F.2d 600 (6th Cir. 1985) and *United States v. Richmond*, 735 F.2d 208 (6th Cir. 1984).  Both

of new counsel, as well as Brown's motions for psychiatric and competency examinations, the examinations themselves, and the hearing thereon—were excludable under 18 U.S.C. § 3161(h)(1)(A) (delay resulting from proceedings or examinations to determine the defendant's mental competency), 18 U.S.C. § 3161(h)(1)(D) (delay resulting from any pretrial motion and the hearing or prompt disposition thereof), and 18 U.S.C. § 3161(h)(7)(B)(iv) (delay resulting from a continuance where the failure to grant a continuance would deny defense counsel reasonable time necessary for effective preparation).  The remaining 27 days between August 19 and September 15 were non-excludable.  Thus, September 15 was the last day trial could commence within the 70-day limit.

cases, like this matter, involved circumstances in which the district court commenced voir dire, took a recess of approximately two weeks, and then resumed trial thereafter. *See Crane*, 776 F.2d at 602; *Richmond*, 735 F.2d at 210–11. Due to the parallels between *Crane*, *Richmond*, and the case at bar, and the parties' reliance on these precedents, a thorough analysis of *Crane* and *Richmond* is warranted.

### 1.          *United States v. Crane*

Stuart R. Crane was indicted on four counts of tax evasion, one count of obstructing justice, and one count of making false declarations before a grand jury. *Crane*, 776 F.2d at 602. On April 13, 1984, Crane was arrested and arraigned, and pleaded not guilty to all six counts in the indictment. *Id.* At the June 20, 1984 pretrial conference, defense counsel raised the issue that the Speedy Trial Act's 70-day limit was close to expiring. *Id.*[6]

When the court asked defense counsel whether he was prepared for trial, he stated that he was ready to try the case but would need some time to find Crane, who was not present at the pretrial conference. *Id.* Nonetheless, a host of other timing issues were raised. Government counsel said that he could not be ready by June 20 because pretrial discovery and final preparation of the exhibit and witness lists had not yet been completed. *Id.* Additionally, government counsel claimed that Crane would not be ready for trial until after July 5 and would likely seek a continuance. *Id.* The judge presiding over the case indicated that he would be leaving the country on June 21 and, upon his return, would be presiding over the trial for another matter until July 3. *Id.* Thus, before the end of the pretrial conference, the court set Crane's trial date for July 5, 1984—thirteen days after the 70-day deadline—and directed the attorneys to complete any remaining pretrial matters before that date. *Id.*

Later that day, the district court learned that the 70-day deadline would not expire until June 22. *Id.* Accordingly, the court instructed a magistrate judge to begin voir dire on June 21, "but not to swear in the jury or proceed further with the trial." *Id.* Over Crane's objection that "this procedure was a 'false start' and an attempt to circumvent the Speedy Trial Act," voir dire

---

[6]Although counsel and the court believed that June 20 was the 70th day, it was actually June 22. *Id.*

was conducted before the magistrate judge on June 22. *Id.* "After voir dire the jury was not sworn in, and the trial was recessed until July 5." *Id.*

On July 5, Crane moved to dismiss the indictment on the grounds that the 70-day limit had expired before the trial commenced. *Id.* Although the district court "stated that the arrangement with the magistrate to have the jury impaneled on June 22 had been 'an inappropriate effort to begin the trial within the 70 days,'" it ruled that "the delay from June 20 to July 5 had been a continuance granted in accordance with the terms of the Speedy Trial Act and that the Act's seventy-day period had been tolled by the continuance." *Id.* Consequently, the court denied Crane's motion to dismiss. *Id.*

Following a "relatively lengthy" trial, Crane was found guilty and sentenced on two of the six counts for which he was indicted. *Id.* On appeal, Crane argued that the district court's procedure violated the Speedy Trial Act because his trial did not commence within the 70-day limit. *Id.* at 602–03.

As an initial matter, this Court agreed with Crane's assertion that the district court's "last-minute arrangement to have the Magistrate begin voir dire on June 22 was an attempt to evade the spirit of the Speedy Trial Act." *Id.* at 603. However, because the district court denied Crane's motion to dismiss the indictment based on its decision to continue the trial from June 20 to July 5, *id.*, we also examined whether this delay was excludable from the 70-day time limit under the Act's "ends of justice" exclusion. *Id.* at 603–05. *See* 18 U.S.C. § 3161(h)(7).

Below, the district court found that the ends of justice served by granting the continuance outweighed the interests of the public and Crane in a speedy trial because (1) neither of the attorneys were prepared for trial on June 20, (2) the judge was unavailable, (3) the case was sufficiently complex to necessitate additional time before trial, and (4) dismissal of Crane's case would have been judicially inefficient because any dismissal would have been without prejudice and Crane, at least according to the government's representations, would have been re-indicted. *Id.* at 604. Crane challenged the sufficiency of these findings, and we considered each of them in turn. *Id.* at 604–06.

First, we noted that the district judge's unavailability, to the extent that it was caused "by his presiding over another case," was attributable to the "general congestion of the court's calendar" and therefore could not serve as a proper justification for an ends of justice continuance under the Act. *Id.* at 605; *see* 18 U.S.C. § 3161(h)(7)(C). Second, we observed that the district court's finding that "neither party had made any attempt to comply with the court's standing orders concerning certain matters of pretrial preparation . . . [,] would seem to indicate a lack of diligent preparation on the part of the government," and thereby preclude an ends of justice continuance based on the government's lack of preparation for trial. *Crane*, 776 F.2d at 605; *see* 18 U.S.C. § 3161(h)(7)(C). Third, we found that (1) the record contained evidence that conflicted with the district court's finding that defense counsel was not prepared for trial on June 20, (2) there was no evidence that defense counsel attempted to "sandbag" the district court,[7] and (3) there was no case support for the district court's implicit conclusion that the parties' failure to comply with the court's housekeeping orders could toll the STA clock. *Crane*, 776 F.2d at 605. With regard to this third finding, we concluded that "[a] "miscarriage of justice' would not have resulted had the case gone to trial before the[ exhibit and witness] lists were submitted to the trial court"; therefore, an ends of justice continuance was not warranted on this basis. *Cf.* 18 U.S.C. § 3161(h)(7)(B)(i). Fourth and finally, we determined that although Crane's trial "involved significant amounts of documentary evidence and many witnesses, the factual and legal questions involved were not novel," and, because the trial was the result of a seven-year investigation, the government could not claim to be "surprised or suddenly caught unaware of the complexity of the case." *Crane*, 776 F.2d at 605–06.

Crane also argued that the district court's findings entered into the record on July 5 "were not the [court's] basis for continuing the trial." *Id.* at 606. In this vein, he asserted that "the reason that the trial was continued was that the judge was going to be out of the country and tied up with another case until July 5 and that the prosecution was unprepared to begin earlier." *Id.* "As support for [t]his argument, Crane point[ed] out that if the judge had granted a continuance on June 20 based on his later findings that the ends of justice served by the continuance

---

[7]We have acknowledged that "[o]ne weakness of the Speedy Trial Act is that it tempts defense counsel to 'sandbag' the trial judge by claiming to be ready for trial (in order to assert the Act's sanction for an untimely trial) while not taking the steps necessary on counsel's part to help the case move toward trial." *Crane*, 776 F.2d at 605.

outweighed other interests, the judge would not have arranged later that same day to have the Magistrate perform an admittedly inappropriate 'commencement' of the trial." *Id.* We agreed, finding that "a fair reading of the record support[ed] Crane's construction of the facts." *Id.* In our view, the district court did not commence trial before the 70-day deadline because "he was [apparently] caught unaware and was going to be out of the country and occupied with another case until after the period expired." *Id.* Thus, it appeared that only after Crane moved to dismiss the indictment did the district court "devise[] new reasons that he stated for the record in excluding the delay from the seventy-day period." *Id.* Because the court's reasons for continuing trial initially were not the same as the ones it gave when denying Crane's motion to dismiss, we held that "Crane's conviction should be vacated because the period of delay in question was not a continuance granted on the basis of the District Court's findings as required by [the Act]." *Id.* at 606–07.

### 2.      *United States v. Richmond*

Eddie Ray Richmond was indicted on four counts of making false statements to the United States Postal Service on September 14, 1982, and arraigned on September 17, 1982. *Richmond*, 735 F.2d at 210. At the arraignment, Richmond pleaded not guilty. *Id.*

The district court scheduled voir dire for January 17, 1983, and then took a recess until January 31, 1983. *Id.* at 210–11. Richmond argued that this procedure "was tantamount to an attempt to circumvent, if not the letter, at least the spirit of the Speedy Trial Act." *Id.* at 211. We disagreed, noting that in the hearing transcript for January 14, 1983—the date the district court scheduled voir dire for January 17, 1983—"Richmond's counsel informed the court that he could not be ready to try the case on [January 17]." *Id.* We also observed that it was only in response to this representation by defense counsel that "the district court informed Richmond's counsel that once the jury was picked, the trial would be adjourned until counsel was ready." *Id.* at 212. On this basis, we concluded that:

> In light of the apparent willingness of the trial court to proceed, the inability of the defense counsel to proceed, and the relatively short delay between voir dire and resumption of the trial, . . . the district court did not attempt to evade the requirements imposed by the Speedy Trial Act in commencing voir dire on January 17, 1983 and recessing the trial until January 31, 1983.

Accordingly, we held that "for purposes of the Act, Richmond's trial commenced on January 17, 1983." *Id.*

Having found that the district court's decision to recess the trial after commencing voir dire was not an attempt to pay "lip service" to the Act, we determined that the principal issue before us was "whether there was sufficient excludable time within the [122] days between Richmond's arraignment and the commencement of voir dire to bring this case within the seventy-day limit established by the Speedy Trial Act." *Id.* In relevant part, we concluded that although some of the time between Richmond's September 17, 1982 arraignment and the January 17, 1983 trial date was excludable under various provisions of the Act—including time attributable to the withdrawal of Richmond's first attorney and time during which the district court considered various pretrial motions, *id.*—the period between December 13, 1982, and January 17, 1983, was *not* excludable under the Act's "ends of justice" provision. *Id.* at 214–16.

The Speedy Trial Act allows for the exclusion of any delay based on the district court's finding that "the ends of justice served by [granting the continuance] outweigh the best interests of the public and the defendant in a speedy trial." *Id.* at 214; *see* 18 U.S.C. § 3161(h)(7)(A). However, a district court may grant an ends of justice continuance only where it makes findings in the record, orally or in writing, which set out the reasons the continuance serves the ends of justice. *Richmond*, 735 F.2d at 214–15. Thus, although "the findings upon which an 'ends of justice' continuance is granted need not be included in the record at the time of the granting of the continuance," *id.* at 215 (collecting cases), the district court must base its continuance on "permissible factors" under the Act and may not invent after-the-fact findings to justify an ends of justice continuance that "cannot fairly be said," upon review of the record, to have served as its basis for granting the continuance. *Id.* at 215–16; *see also United States v. Moss*, 217 F.3d 426, 433 (6th Cir. 2000) ("What a district court may not do, however, is allow the deadline to expire and then later attempt to rationalize the delay as having been required by the interests of justice.").

In its January 19, 1983 order, the district court listed three justifications for its findings that the ends of justice were served by the continuance from mid-December to January 17, 1983. *Id.* at 215. First, Richmond's substitute counsel needed this time to prepare his client's case. *Id.*

Second, the judge presiding over Richmond's case would not be available between December 20, 1982, and January 5, 1983, due to surgery. *Id.* Third, the district in which the court was located had a relatively small number of trial judges and the court itself had a heavy criminal docket. *Id.* Under the Act's provisions, however, only the first and second reasons—affording defense counsel reasonable time for effective preparation[8] and the trial judge's surgery[9]—could serve as proper considerations for granting an ends of justice continuance under the Act. *Id.* at 215–16. As in *Crane*, 776 F.2d at 605, the *Richmond* Court noted that the district court's congestion—embodied by "the burden of the court's criminal docket"—was not a proper basis for granting an ends of justice continuance. 735 F.2d at 215–16.

After reviewing the record, the *Richmond* Court concluded that "the district [could] not fairly be said to have granted the continuance of the trial date from December 13, 1982[,] based on the findings that it set forth in the January 19, 1983 order." *Id.* at 216. We reached this conclusion, at least in part, because neither the district court's December 8, 1982 order directing entry of the continuance, nor the January 19, 1983 order denying Richmond's motion to dismiss the indictment "represent[ed] that [the court] had made the requisite findings prior to granting the continuance." *Id.* Further, since the December 8 order authorized the clerk of the court to determine the length of the continuance based on the first available trial date, this indicated that "the continuance was not based on a balancing of the ends of justice, on the one hand, and the interests of the public and the defendant in a speedy trial, on the other." *Id.* (citation omitted). Lastly, because the district court "candidly acknowledged" on January 14, 1983, that it had been unaware of the "Speedy Trial Act problem" until that date, we found that the continuance of trial ordered on December 8 could not have been based on ends of justice findings because, if this had been the case, by January 14, "there would have been no problem for [the district court] to confront." *Id.* For the aforementioned reasons, we vacated Richmond's conviction, ordered that the indictment against him be dismissed, and remanded to the district court for a determination as

---

[8]*See* 18 U.S.C. § 3161(h)(7)(B)(iv).

[9]Under the previous version of 18 U.S.C. § 3161(h)(7)(B)(i), we noted that "illness of the trial judge is a proper consideration in determining whether failure to grant a continuance would make continuation of the case impossible." *Richmond*, 735 F.2d at 215 (citations omitted).

to whether the indictment should be dismissed with or without prejudice. *Id.* at 216–17 (citing *United States v. Bilsky*, 664 F.2d 613, 618 (6th Cir. 1981)).

### 3. The Case at Bar

There are two significant lessons, relevant to this case, to be gleaned from *Crane* and *Richmond*. First, this Court will not countenance maneuvers aimed at merely paying lip service to the Speedy Trial Act's requirements and may find that trial did not "commence" before the Act's 70-day deadline, even where voir dire occurred within 70 days, where such machinations are apparent. *See Crane*, 776 F.2d at 603 (citing *Gonzalez*, 671 F.2d at 444). That being said, a district court does not inherently "pay lip service" to the STA when it relies on a procedure that achieves the same outcome as the start-and-stop plan in this case, *i.e.*, the commencement of voir dire, followed by a two-week recess, followed by trial. *See Richmond*, 735 F.2d at 210–12. Instead, we must examine whether such a procedure was warranted under the Act. *Id.* at 211–12; *see* 18 U.S.C. § 3161(h).

In examining whether the start-and-stop plan violated the STA, we address two important issues. First, we must determine whether the record supports a finding that the district court's start-and-stop plan constituted an improper attempt to evade the spirit of the Speedy Trial Act. *See Crane*, 776 F.2d at 603. Even if we answer this first question in the affirmative, because the district court ultimately tied the delay in this case to § 3161(h)'s ends of justice provision, we must also consider whether the district court's findings were sufficient to justify an ends of justice continuance under the Act, *Crane*, 776 F.3d at 603–07, and whether the findings underlying the court's ends of justice continuance were the true basis for its decision to continue the trial, *Richmond*, 735 F.2d at 214–16.

### a. The District Court's Start-and-Stop Plan Violated the Spirit of the STA

Brown argues that the district court's start-and-stop plan was intended to merely pay lip service to the requirements of the Speedy Trial Act. Based on our review of the record, we find that the district court's start-and-stop plan violated the spirit of the Act.

At the September 3 teleconference, and in response to the government's motion for a continuance, the district court initially sought an alternative approach, short of continuing trial, to accommodate Officer Phillips' training schedule.  When government counsel insinuated that calling the government's witnesses out of order would not necessarily resolve the scheduling conflict or enable Officer Phillips to appear at the trial, the court suggested continuing trial to September 15, the last day within the 70-day limit.  Government counsel indicated that he would like to attend his son's surgery on September 15, while defense counsel stated that he had a trial scheduled for September 16.  Both attorneys, however, told the court that they would be available for trial on September 15 if the court elected to set the trial for that date.  Specifically, defense counsel told the court that he would "do everything within [his] power to be there" and that his state-court trial set for September 16 could "probably" be continued because his client was not in custody, while government counsel stated that although he was "hoping to attend [his son's] surgery," which was scheduled for September 15, the government would "try the case the day the case is called for trial, whether we have witnesses, whether we don't have witnesses" and that "we'll be there to try the case when the case has to be tried."  (R. 87, Tr. of Sept. 3 Teleconf., PageID# 329–30, 332–33).  Although the court opined, near the end of the teleconference, that "the easiest thing to do here would be to deny the motion, keep the case set, and just tell Mr. Phillips you're going to have to miss one of the trainings," it subsequently appeared to have a change of heart, went off the record, then orally granted the motion and continued the trial to September 22, seven days after the 70-day deadline.  (*Id.* at 332–34).  At the time the court granted this continuance, it had not calculated the STA deadline for Brown's case.  Ultimately, the court granted the government's motion for a continuance on the grounds that Officer Phillips was a "crucial witness" for the government who was "unavailable" for trial during the week of September 8.  Nowhere in the record do we discern any discussion of the government's ability to subpoena Officer Phillips, *see* Fed. R. Crim. P. 17, a course of action that likely would have eliminated the need for this appeal.

On September 4, after Brown filed his opposition to the continuance of trial, the district court seemingly changed course and stated that it would deny the government's motion for a continuance despite orally granting it the day before.  Instead of continuing trial, the court's new procedure called for conducting voir dire on September 8, taking a two-week recess, and

resuming trial with preliminary instructions and opening statements on September 22. The court opined that this start-and-stop plan would address the "quandary" created when it granted the government's motion for a continuance, accommodate the attorneys' purported conflicts on September 15 and 16, and accommodate Officer Phillips' training schedule.

Brown orally objected to this plan right before the parties commenced voir dire on September 8. As noted in Brown's opening brief before this Court, the district court's immediate response to this objection was to ask Brown, "Do you want to proceed *pro se*, without your lawyer?" (R. 88, Tr. of Final Pretrial Conf., PageID# 339). Brown responded, "No, sir," and the court went on to assert that the start-and-stop plan was necessary due to both attorneys' unavailability during the week of September 15. (*Id.* at 340). After explaining its belief that commencing voir dire before the 70-day limit would cause the STA clock to stop "as a matter of law," the court asked defense counsel, "How is [Brown] prejudiced by that, Mr. Curtis?" (*Id.* at 340). Defense counsel conferred with Brown, then asserted, "Judge, there's no way we can be prejudiced." (*Id.* at 341). On September 10, two days later, the district court issued an order amending the criminal minutes from September 8 and finding that the seven days between September 15 and September 22 were excludable under the STA because the attorneys were unavailable during that week.

Brown argues that in this case, as in *Crane*, the district court's procedure violated the spirit of the STA because "the trial court did not intend to proceed with trial at a normal pace until after the STA deadline had passed." We agree. As in *Crane*, the record indicates that the district court sought to continue trial to a date beyond the 70-day limit *from the outset* (by orally granting the government's motion and continuing the trial to September 22), and only subsequently determined that it would commence trial prior to the expiration of the 70-day deadline (by conducting voir dire on September 8 and then taking a two-week recess until September 22) after calculating the 70-day deadline. Such maneuvers only paid lip service to the Act. *See Crane*, 776 F.2d at 602 (noting that before discovering that the 70-day limit would not expire until June 22, 1984, the district court set trial for July 5, 1984; after the court learned of the June 22 deadline, the court ordered a magistrate judge to commence voir dire on June 21, and then take a recess until July 5). Although the instant case does not involve a damning admission

by the district court that commencing voir dire on the date in question was "an inappropriate effort to begin the trial within the 70 days," *id.* at 603, the district court in this matter admitted on the record that it did not calculate the 70-day deadline before granting the government's motion and continuing trial to September 22—seven days after the deadline.

Another fact suggesting that the court devised the start-and-stop plan in order to pay lip service to the Act is that the court's decision to conduct voir dire on September 8 before taking a recess until September 22 accomplished the same purpose as the original continuance to September 22: permitting Officer Phillips to appear at trial without interfering with his training schedule. In response to Brown's criticism that Officer Phillips' training schedule conflict was not a sufficient justification for continuing trial, the court began relying more and more on the attorneys' alleged unavailability as its reason for taking the two-week recess. However, the Act does not countenance district courts inventing new, after-the-fact reasons for continuing trial. *See Crane*, 776 F.2d at 606.

Finally, unlike in *Richmond*, there is no indication, despite counsels' purported "conflicts" during the week of September 15, that either defense or government counsel would not have had reasonable time to effectively prepare for trial if trial had commenced on either September 8 or September 15. *Cf. Richmond*, 735 F.2d at 211. To the contrary, both attorneys indicated at the September 3 teleconference—despite the court's then-tentative proposal to select a jury, recess, and then resume trial at a later date—that they would be prepared to try the case on the day it was called by the court, including on September 15.[10]

For these reasons, we find that the district court's start-and-stop plan evaded the spirit of the Speedy Trial Act. *Crane*, 776 F.2d at 603. However, as in *Crane*, because the district court purported to exclude time after the 70-day limit from the STA clock, we must next determine

---

[10]Counsels' statements regarding their availability also belies the government's attempt, on appeal, to re-cast the district court's reasons for proceeding with the start-and-stop plan as motivated by a desire to "avoid denying continuity of counsel to both parties." *Appellee's Br.* at 13 (citing 18 U.S.C. § 3161(h)(7)(B)(iv)). The district court did not make such a finding on the record, orally or in writing, and even if it had, at no time during these proceedings did the court weigh any concerns about continuity of counsel against the best interests of the public and Brown in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(B)(iv); *Richmond*, 735 F.2d at 214–15 ("By its terms [the Act] requires the district court to grant an 'ends of justice' continuance only upon the basis of findings that the continuance serves the ends of justice and to set forth its reasons for granting an 'ends of justice' continuance on the record, either orally or in writing." (citations omitted)).

whether the time between the September 15 deadline and the September 22 commencement of trial was nonetheless excludable under § 3161(h).  *See id.* at 603–06.

### b.    The District Court Erred in Excluding Time in September 2014 Under the Act

Originally, the district court granted the government's motion to continue trial on the grounds that Officer Phillips was a crucial witness and unavailable for trial on September 8. However, after Brown filed his opposition, the district court denied the government's motion and elected to proceed with the start-and-stop plan instead.

At the final pretrial conference, the district court opined that commencing voir dire on September 8, a week prior to the 70-day limit, stopped the STA clock "as a matter of law." (R. 88, Tr. of Final Pretrial Conf., PageID# 340).  As explained above, we reject this assertion and conclude that trial did not commence on September 8, despite the commencement of voir dire, because the court employed the start-and-stop plan with the intent to pay lip service to the Act.  Nonetheless, like the lower court in *Crane*, the district court in this case sought to exclude time after the deadline from the STA clock in order to avoid an STA violation.  *Crane*, 776 F.2d at 603–04.  Thus, because the court's September 10 order purported to exclude the week between the September 15 deadline and the September 22 trial date from the STA clock, we must determine whether this period of delay was excludable under the Act.  *See id.* at 604–06.

In this case, the district court gave two reasons for utilizing the start-and-stop plan: Officer Phillips' training conflict and the trial attorneys' unavailability.  Specifically, during the September 4 teleconference and September 8 pretrial conference, the court indicated that both Officer Phillips' training conflict and the attorneys' unavailability warranted employing the start-and-stop plan.  In the September 10 order, the court stated that the week between September 15 and September 22 was excludable under the provisions of the STA due to counsels' unavailability during the week of September 15.

The government argues that a period of delay resulting from either (a) the absence or unavailability of an essential witness, or (b) an attorney's unavailability because of a conflicting trial commitment, is excludable the Act.  However, for the reasons set forth below, we find that

neither Officer Phillips' scheduling conflict due to his trainings, nor the attorneys' unavailability due to personal and professional "conflicts," warranted excluding the delay between September 15 and September 22 from the STA clock.

The Act permits the exclusion of "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness." 18 U.S.C. § 3161(h)(3)(A). Under the relevant provision, "an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence." 18 U.S.C. § 3161(h)(3)(B). Under the same provision, "an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." *Id.*

As indicated above, we review the district court's factual findings for clear error. *Carroll*, 26 F.3d at 1390. "A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Byrd*, 689 F.3d 636, 639–40 (6th Cir. 2012) (citation omitted).

In this case, assuming Officer Phillips was an essential witness, he could not have been considered absent because there was no indication that his whereabouts were unknown. Instead, government counsel had been communicating with Phillips in the days leading up to trial and learned that Phillips' training sessions made it difficult, if not impossible, for him to attend trial during the week of September 8. With regard to unavailability, although the district court found that the requested continuance was *not* the "result of any lack of diligence on the government's part," (R. 47, Order, PageID# 100), the record belies such a finding. Government counsel stated that "some of" the difficulties with calling Officer Phillips as a witness for a trial during the week of September 8 were "[his] fault" because he "missed a week of prep" while his son was in the hospital and was "late getting ahold of Mr. Phillips." (R. 87, Tr. of Sept. 3 Teleconf., PageID# 328). This statement suggests that government counsel did not exercise due diligence in attempting to procure Officer Phillips' presence for the September 8 trial date, and the Act explicitly prohibits district courts from granting continuances based on the government attorney's "failure to obtain available witnesses." 18 U.S.C. § 3161(h)(7)(C). Alternatively,

even if we were to conclude that the district court's factual finding was not clearly erroneous, there is no indication that Officer Phillips could not have been subpoenaed to appear on September 8. More troublingly, there is also no indication that Officer Phillips was not available to testify on September 15. Instead, the district court ruled out the possibility of commencing trial on September 15, the last day within the 70-day limit, on the grounds that government and defense counsel were "unavailable" that day. As explained below, however, the Act does not provide for continuances based on counsel's "unavailability," standing alone, and the district court failed to make on-the-record findings that any reason for delay under § 3161(h)(7)(B)(iv) outweighed the best interests of Brown and the public in a speedy trial. Accordingly, we agree with Brown's assertion that any conflict that prevented the district court from trying this case on either September 8 or September 15 was "self-created."

As in *Crane*, subsequent to its initial decision to delay the trial date, the district court issued an order stating that the recess between voir dire and opening statements was excludable from the Act's 70-day limit.[11] *See Crane*, 776 F.2d at 603–04. In this case, the district court's September 10 order found that the week-long period between September 15 and September 22 was excludable under the Act due to government and defense counsels' unavailability during that time period.

The Act does not provide for the exclusion of delay based on a generalized finding that government counsel or defense counsel is "unavailable" for a particular trial date. Instead, the provision governing ends of justice continuances states that one factor the courts shall consider in determining whether to grant such a continuance is "[w]hether the failure to grant . . . a continuance . . . would unreasonably deny the defendant or the Government continuity of counsel" or "deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). On the facts in the record, it was clear error for the district court to grant an ends of justice continuance under this provision because, in response to the court's inquiry, both government and defense counsel stated that they could try the case on

---

[11]More specifically, the district court's order found that the time between the *70-day deadline* (September 15) and opening statements (September 22) was excludable.

September 15 if the court scheduled trial for that date. Defense counsel stated that he "would do everything within [his] power" to try the case on September 15 and "could probably get [his state-court trial set for September 16] continued." (R. 87, Tr. of Sept. 3 Teleconf., PageID# 329). Government counsel stated that although he was "hoping to attend" his son's surgery, the government would "try the case the day [it was] called for trial," whether or not all of its witnesses could appear for trial. (*Id.* at 330, 332). Government counsel also told the court, "[T]he point of the matter is . . . we'll be there to try the case when the case has to be tried." (*Id.* at 333). It was only after counsel made these explicit representations regarding their willingness to try the case on the date of the court's choosing that the court began relying on the attorneys' supposed unavailability as a justification for continuing the trial. However, even if the court's findings about the attorneys' unavailability were not clearly erroneous, which they are, such findings would not justify an ends of justice continuance under § 3161(h)(7)(B)(iv) because the court never found (orally or in writing)—and the record does not support a finding—that either attorney (a) could not be present to provide continuity of counsel or (b) needed more time to effectively prepare for trial. *See* 18 U.S.C. § 3161(h)(7)(B)(iv). Thus, a continuance was not warranted based on trial counsels' so-called "unavailability."

The government cites *United States v. Sobh*, 571 F.3d 600, 604 (6th Cir. 2009), for the proposition that an "attorney's unavailability because of a conflicting trial commitment" may be used to justify an ends of justice continuance. *Appellee's Br.* at 18. But *Sobh* does not so hold and, in any event, is readily distinguishable on the facts. In *Sobh*, each of the defense attorneys in a multiple-defendant case requested additional time to prepare for trial and some defense attorneys sought additional time to continue pursuing "fruitful plea negotiations." 571 F.3d at 603. Only after the defense attorneys sought this continuance did government counsel join their request, "citing conflicting trial and professional commitments, as well as the unavailability of the primary case agent to participate in trial preparation." *Id.* at 603–04. More importantly, the district court granted an ends of justice continuance only after setting forth reasons that "reflect[ed] consideration" of the relevant factors and making "an express finding that the ends of justice served by the continuance outweighed the best interest of the public and the defendant in a speedy trial." *Id.* at 604.

In this case, the only motion for a continuance was not based on trial counsels' purported "conflicts," but on Officer Phillips' training schedule. At the September 3 teleconference, government counsel did not represent that his desire to attend his son's surgery would keep him from trying the case on either September 8 or September 15, but instead informed the court that the government would try the case when it was called for trial. Further, unlike in *Sobh*, government counsel was not joining in defense counsel's motion for a continuance (because defense counsel did not so move), and there was no indication that either attorney would not have had enough time for "effective preparation" if trial began on either September 8 or September 15. Finally, although the district court's September 10 order found that the time between September 15 and September 22 was excludable under the Act, the district court never tied this exclusion to the Act's ends of justice provision—in the order or elsewhere in the record—and the district court never explicitly balanced—orally or in writing—any ends of justice considerations against the public and Brown's interest in a speedy trial. *See* § 3161(h)(7)(A). Thus, *Sobh* is inapposite, and an ends of justice continuance under § 3161(h)(7)(B)(iv) was not justified on the facts of this case.

### c. The District Court Failed to State the True Reasons for the Delay or Weigh the Interests at Stake as Required by § 3161(h)(7)(A)

As noted in *Richmond*, 735 F.2d at 214, Congress drafted the STA to explicitly require that a district court granting an ends of justice continuance set forth, orally or in writing, "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *See* 18 U.S.C. § 3161(h)(7)(A). In *Richmond*, we held that this requirement serves two purposes:

> First, Congress wanted to insure that a district judge would give careful consideration when balancing the need for delay against "the interest of the defendant and of society in achieving [a] speedy trial." Second, the requirement provides a record so that an appellate court may review the decision. If a district court's statements do not comport with these two purposes, they are not sufficient to satisfy the statutory command that "reasons" be set forth "in the record of the case." Without properly explained reasons, the delay caused by a continuance is not an excludable item.

*Richmond*, 735 F.2d at 215 (quoting *United States v. Brooks*, 697 F.2d 517, 520 (3d Cir. 1982)) (internal citations omitted).

In the instant case, the district court's statement that the time between September 15 and September 22, 2014, was excludable because government and defense counsel were "unavailable" during that week cannot fairly be said to have been its true reason for adopting the start-and-stop plan. *See Richmond*, 735 F.2d at 216 ("Based on our review of the record, we believe that the district court cannot fairly be said to have granted the continuance of the trial date from December 13, 1982 based on the findings that it set forth in the January 19, 1983 order" because (1) the court's pre-recess order directing entry of the continuance did not state that the continuance was intended to serve the ends of justice, (2) the court empowered the clerk of the court to re-set trial for the next available trial date, indicating that the court failed to balance the ends of justice and the public and defendant's interest in a speedy trial in choosing the new trial date, and (3) the court acknowledged that it only became aware of the "Speedy Trial Act problem" after the continuance was granted); *accord Crane*, 776 F.2d at 606–07. Instead, the sequence of events in this matter suggests that the district court continued the trial date to September 22, 2014 without calculating the STA deadline and decided that the attorneys' supposed unavailability warranted excluding a week from the STA calculations only after Brown argued, in his opposition and at the final pretrial conference, that his speedy trial rights were being violated and that Officer Phillips' scheduling conflict did not warrant a continuance of the trial.

As in *Crane* and *Richmond*, when the district court first re-scheduled the trial date to a date beyond the STA deadline, it did so without calculating the 70-day limit under the Act because it was apparently "caught unaware" by the impending deadline. *See Crane*, 776 F.2d at 602, 606; *Richmond*, 735 F.2d at 216. Likewise, the district court issued its order excluding a week from the STA calculations based on an apparent ends of justice continuance only after it had already decided to delay the trial date, *see Crane*, 776 F.2d at 603–04; *Richmond*, 735 F.2d at 215–16, and proceed with the start-and-stop plan. Thus, a fair reading of the record indicates that the reasons stated in the district court's September 10 order, which would not have supported an ends of justice continuance under § 3161(h)(7)(B)(iv) in any event, were not the

district court's true reasons for continuing all parts of the trial except voir dire from September 8 to September 22. *See Crane*, 776 F.2d at 607; *Richmond*, 735 F.2d at 216.

Finally, in order to grant an ends of justice continuance based on any of the considerations articulated under the Act, the district court was required to set forth on-the-record findings, orally or in writing, that the ends of justice served by the continuance outweighed the interests of Brown and society in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). In this case, however, the district court failed to weigh these interests on the record at any time during the proceedings below. This omission precluded the court from excluding the seven days between September 15 and September 22 from the STA clock. *See Richmond*, 735 F.2d at 215 ("Without properly explained reasons, the delay caused by a continuance is not an excludable item.").

For the aforementioned reasons, we find that the district court's start-and-stop plan violated the STA.

**B.     Defendant's Objections Satisfied the Act's Motion Requirement Under 18 U.S.C. § 3162(a)(2)**

Under § 3162(a)(2), if an STA violation occurs, "the information or indictment shall be dismissed on motion of the defendant." The Act does not specify whether the defendant's motion must be in writing.

In this case, it is clear from the record that Brown *orally* objected to the STA violation arising from the district court's start-and-stop plan at the September 8 pretrial conference. However, it is equally clear that Brown never filed a formal, written motion to dismiss the indictment based on this violation. Although other circuits have found that a defendant's oral objection to an alleged STA violation satisfies § 3162(a)(2)'s motion requirement, we have never addressed this issue in a binding opinion.[12] For the following reasons, we agree with the majority of circuits that have examined this issue and find that a defendant's oral objections to an

---

[12]In *United States v. Pike*, No. 94-5104, 1995 WL 234667, at *1–2 (6th Cir. Apr. 20, 1995), an unpublished opinion, this Court held that the defendant did not preserve his STA claim for review on appeal because he failed to file a formal motion to dismiss—as opposed to merely raise an oral objection—prior to trial. However, this opinion is not binding, *see Shuler v. Garrett*, 715 F.3d 185, 187 n.1 (6th Cir. 2013); 6 Cir. R. 32.1, and gave no rationale for its implicit holding that only a *written* motion to dismiss the indictment qualifies as a "motion of the defendant" under 18 U.S.C. § 3162(a)(2). As explained below, two of our sister circuits have rejected this approach.

alleged STA violation satisfy § 3162(a)(2)'s motion requirement so long as the defendant brings to the court's attention his belief that his STA rights have been violated. *See United States v. Alvarez-Perez*, 629 F.3d 1053, 1060–61 (9th Cir. 2010); *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997), *overruled on other grounds by Apprendi v. New Jersey*, 530 U.S. 466 (2000); *contra United States v. Spagnuolo*, 469 F.3d 39, 45 (1st Cir. 2006).

In *Alvarez-Perez*, the Ninth Circuit correctly noted that § 3162(a)(2) "does not specify whether [a] motion [to dismiss the indictment] must be in writing." 629 F.3d at 1060; *see* 18 U.S.C. § 3162(a)(2). Thus, in considering whether an oral motion to dismiss may satisfy the Act's motion requirement as a matter of first impression, the *Alvarez-Perez* court cited the Tenth Circuit's decision in *Arnold* with approval, and ultimately held that "a court should entertain a motion to dismiss under the STA so long as the defendant 'br[ings] to the trial court's attention his belief that the STA ha[s] been violated.'" *Id.* at 1060–61 (quoting *Arnold,* 113 F.3d at 1149). Although it noted that "defense counsel should ordinarily make such motions in writing . . . when possible," the court held that permitting defendants to bring oral motions to dismiss based on STA violations was aligned with "Congress's clear intent to place a fair share of responsibility for ensuring that cases are tried in a timely fashion on the district court and government counsel," and was reasonable in light of the fact that "counsel's failure to make a meritorious STA motion may constitute ineffective assistance." *Id.* at 1061 (citations omitted).

With regard to the first rationale, like the Ninth Circuit, we have previously recognized the Act's requirement that both the government and the district court take responsibility for bringing criminal matters to trial in a timely matter. In *United States v. Moss*, 217 F.3d 426 (6th Cir. 2000), a case wherein the district court took nearly a year to rule on the defendant's pre-trial motion, *see id.* at 431, this Court explained:

> Although the [STA] is more commonly implicated when the prosecutor causes the delay, the text of the statute clearly expresses Congress's concern that, without prodding, judges would not bring defendants to trial with sufficient speed. *See* 18 U.S.C. § 3161(h)(8) (requiring dismissal when a violation of the Speedy Trial Act is attributable to the court). The result was a statute that establishes a seventy-day deadline to bring defendants to trial, and makes this deadline a ticking time bomb.

*Id*. at 433 (Gilman, J., concurring); *see also Zedner v. United States*, 547 U.S. 489, 502 (2006) (stating that under the STA, "the prosecution and the court retain a strong incentive to make sure that the trial begins on time" because they "cannot know until the trial actually starts or the guilty plea is actually entered whether the defendant will forgo moving to dismiss"). Thus, although the Act clearly assigns the responsibility of *moving* for dismissal to the defendant, 18 U.S.C. § 3162(a)(2), since both the government and the district court share responsibility for bringing cases to trial in a timely fashion, there is no reason to find that the Act permits a court to ignore a defendant's allegation of an STA violation solely based on the form this assertion takes. Accordingly, reading the word "written" into § 3162(a)(2)'s motion provision where Congress did not draft the statute to include this requirement would ignore the fact that an oral objection may bring an alleged STA violation to the district court's attention just as readily as a written motion, *see Alvarez-Perez*, 629 F.3d at 1061; *Arnold*, 113 F.3d at 1149, and thereby "elevate form over substance." *Cf. Warkentien v. Vondracek*, 633 F.2d 1, 2 n.1 (6th Cir. 1980).

Second, the *Alvarez-Perez* court reasoned that allowing a defendant's oral objection to satisfy the Act's motion requirement is reasonable because an attorney's failure to file a § 3162 motion may give rise to a claim for ineffective assistance of counsel. 629 F.3d at 1061. Specifically, the court noted that under its earlier case, *United States v. Palomba*, 31 F.3d 1456 (9th Cir. 1994), a defense attorney's "failure to make a meritorious STA motion may constitute ineffective assistance" under the framework set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Alvarez-Perez*, 629 F.3d at 1061. Applying *Strickland*'s "deficient performance prong," the *Palomba* court reasoned that defense counsel's performance was deficient because (1) "no apparent or plausible tactical decision could explain counsel's failure to move for dismissal, potentially with prejudice," based on a violation of the Act, and (2) there was an "apparent absence from the record of indicia of tactical reflection by counsel on this issue." 31 F.3d at 1466. In at least two unpublished decisions, this Court has employed similar analyses. *See United States v. Jackson*, 22 F. App'x 396, 397–98 (6th Cir. 2001) (stating that in circumstances where "the number of non-excluded days before trial exceed[ed]" the 70-day limit, "counsel would be expected to raise a speedy trial violation" and counsel's "failure to raise this issue [would] arguably f[a]ll outside the range of acceptable representation"); *Smith v. United States*, No. 88-2130, 1989 WL 88455, at *1–2 (6th Cir. Aug. 8,

1989) (asserting that the defendant "stated a facially valid claim of ineffective assistance of counsel based upon his counsel's failure to move for dismissal of the charges against him" where 41 days elapsed between the time of the defendant's arrest and the time of his indictment despite 18 U.S.C. § 3162(a)(1)'s "require[ment] that the charges against a defendant be dismissed where more than 30 days elapse[d] following his arrest without an indictment being filed against him").

Like the Ninth Circuit in *Alvarez-Perez,* the Tenth Circuit in *Arnold* held that a defendant's "statements to the district court prior to trial, in which he claimed a violation of the STA, satisf[ied] the motion requirements of 18 U.S.C. § 3162(a)(2)." *Arnold,* 113 F.3d at 1149. In that case, as in the case at bar, the defendant "present[ed] the STA issue to the district court, albeit not in the form of a formal, written motion," prior to the commencement of voir dire. *Id.*

By contrast with the Ninth and Tenth Circuits' holdings in *Alvarez-Perez* and *Arnold*, in *Spagnuolo*, the First Circuit held that the defendant's oral motion to dismiss did not satisfy the Act's motion requirement. *Spagnuolo,* 469 F.3d at 42. However, as previously stated, § 3162(a)(2) "does not specify whether th[e] [defendant's] motion must be in writing," *Alvarez-Perez*, 629 F.3d at 1060, and the *Spagnuolo* court cited no binding authority for the proposition that an oral motion can never satisfy § 3162(a)(2).

Notably, although not explicit, the Seventh Circuit's analysis in *United States v. Turner*, 203 F.3d 1010 (7th Cir. 2000), implied that a defendant's oral motion to dismiss the indictment satisfies § 3162(a)(2)'s motion requirement. In *Turner*, on the day of trial, the defendant challenged various delays in an oral motion to dismiss. 203 F.3d at 1017. Without explicitly evaluating whether the Speedy Trial Act permits defendants to move for the dismissal of their indictments orally or only in writing, the Court analyzed the defendant's STA claim on the merits and ultimately rejected it. *Id.* at 1017–18. Thus, the Seventh Circuit's analysis in *Turner* suggests, as explicitly held by the Ninth and Tenth Circuits, that 18 U.S.C. § 3162(a)(2) does not require that a motion made pursuant to § 3162(a)(2) take the form of a formal, written motion.

Having carefully reviewed the aforementioned authorities, we find the Ninth and Tenth Circuits' interpretation of § 3162(a)(2), which recognizes written as well as oral motions, to be more persuasive. Accordingly, we hold that although defendants should normally make their

§ 3162(a)(2) motions in writing, "a court should entertain a motion to dismiss under the STA so long as the defendant 'br[ings] to the trial court's attention his belief that the STA ha[s] been violated.'" *Alvarez-Perez,* 629 F.3d at 1060–61 (quoting *Arnold,* 113 F.3d at 1149).

Like the lower court in *Arnold*, the district court in this case acknowledged that Brown raised the STA issue. *See Arnold*, 113 F.3d at 1149 (observing that "[t]he district court itself acknowledged the adequacy of appellant's presentation"). The court responded to Brown's claim that his STA rights were being violated by devising the start-and-stop plan, overruling Brown's oral objections[13] at the final pretrial conference, and issuing a written order excluding the week between September 15 and September 22 from the STA clock. Although Brown did not use "magic words" to signal that he wished to dismiss the indictment based on the STA violation, or even refer to § 3162(a)(2) by name, neither did the defendant in *Arnold*. Instead, Arnold's attorney said, "Your Honor, there is one other thing . . . . As I look through this file and as my client looked through, he thinks there's a speedy trial issue . . . From June 15th to August 24th is the passage of time which he believes should be counted towards violation of the Speedy Trial Act." *Arnold*, 113 F.3d at 1146. Similarly, on September 4 and September 8, respectively, Brown (1) filed written objections to continuing trial to September 22 and (2) raised oral objections to the court's strategy of using the start-and-stop plan to accomplish the same delay as a continuance by taking a two-week recess after conducting voir dire. Brown raised his September 8 objections immediately prior to the commencement of voir dire. When the district court rejected Brown's objections, it did so based on its misconception that the delay did not violate the STA. Because there is no ambiguity as to whether Brown brought his claim that his STA rights were being violated to the district court's attention, we conclude that Brown's oral objections at the September 8 pretrial conference satisfied § 3162(a)(2)'s motion requirement.

For the aforementioned reasons, we find that Brown's oral objections at the final pretrial conference satisfied § 3162(a)(2).

---

[13]Importantly, there is no indication that Brown made his objections orally rather than in writing in order to take advantage of the government or "sandbag" the court. *Cf. Zedner*, 547 U.S. at 503 (noting that § 3162(a)(2)'s motion requirement is intended to "prevent[] undue defense gamesmanship" (footnote omitted)); *Crane*, 776 F.2d at 605 (expressing concern that the STA "tempts defense counsel to 'sandbag' the trial judge by claiming to be ready for trial . . . while not taking the steps necessary on counsel's part to help the case move toward trial").

**C.      *United States v. Sherer* Does Not Foreclose STA Relief as to Defendant**

The STA "requires that the defendant bring a motion for dismissal . . . prior to trial," *United States v. White*, 985 F.2d 271, 274 (6th Cir. 1993), and a defendant's failure to move to dismiss before trial begins constitutes a waiver of the right to dismissal.  18 U.S.C. § 3162(a)(2).  The government argues that Brown waived his right to move to dismiss the indictment under *United States v. Sherer*, 770 F.3d 407 (6th Cir. 2014), because his September 8 objections to the start-and-stop plan, which we have held satisfied § 3162(a)(2)'s motion requirement, were made prior to the expiration of the 70-day deadline on September 15.  *Appellee's Br.* at 8–9.

In *Sherer*, this Court found that defendant Quentin Sherer's § 3162(a)(2) motion was premature and therefore ineffective because he filed it 57 days after his indictment came down, *i.e.*, "thirteen days before the Government's time r[an] out" under the 70-day deadline.  770 F.3d at 411.  Relying on the First Circuit's holding in *United States v. Connor*, 926 F.2d 81, 84 (1st Cir. 1991), and the Ninth Circuit's holding in *United States v. Wirsing*, 867 F.2d 1227, 1230 (9th Cir. 1989), we held that "[t]he proper course was to challenge the continuance on day seventy-one (or later)" and, as a result, Sherer's failure to take this course of action "waive[d] his rights under the [STA]."  *Sherer*, 770 F.3d at 411.  The government argues that Brown waived his STA rights for the same reason.  We disagree.

Neither *Sherer* nor the cases on which it relies involved a court purportedly commencing trial with voir dire and then immediately halting trial for two weeks.  None of those cases involved issues pertaining to voir dire at all.  In *Connor*, the First Circuit quoted the Ninth Circuit's holding in *Wirsing* for the proposition that:

> In ruling on a motion to dismiss an indictment for failure to comply with the Speedy Trial Act, a court need only consider alleged delay which occurs prior to and including the date on which the motion is made. The right to challenge any subsequent delay is waived absent the bringing of a new motion to dismiss.

926 F.2d at 84 (quoting *Wirsing*, 867 F.2d at 1230) (emphasis omitted).  Thus, the *Connor* court concluded that the defendant's motion to dismiss, which was filed two weeks prior to the commencement of the challenged continuance and was not renewed thereafter, was not a proper vehicle for objecting to the continuance, and, as a result, the defendant had waived any challenge

to the continuance by failing to renew the motion to dismiss.  *Id.*  Similarly, in *Wirsing*, the Ninth Circuit concluded that it would consider only the period prior to the defendants' filing of their motions to dismiss in determining whether any delay in ruling on pretrial motions violated the Act because the defendants did not bring any later-filed motions and had therefore waived the right to "challenge any subsequent delay."  867 F.2d at 1230.

Like *Sherer*, neither *Connor* nor *Wirsing* involved a procedure similar to the one undertaken by the district court in this case: a procedure that caused trial to begin, at least in the district court's estimate, before the expiration of the 70-day limit.  In other words, unlike *Crane* and the case at bar, neither *Sherer*, nor the cases on which it relied, involved a court-created obstacle to moving to dismiss the indictment after the 70 days that arose *chiefly due to* the court's decision to ostensibly commence trial, through the voir dire process, before the 70-day limit.  *See Sherer*, 770 F.3d at 411 (delay due to continuance designed to permit the government to procure DNA evidence); *Connor*, 926 F.2d at 83 (delay resulting from continuance based on the unavailability of essential witnesses); *Wirsing*, 867 F.2d at 1230–31 (delays resulting from pretrial motions).

The dissent would have us ignore the facts of this case in order to apply *Sherer* regardless of its appropriateness.  However, each of our decisions "must necessarily be based upon application of relevant law to the unique facts before the [C]ourt."  *Local 120, Int'l Molders & Allied Workers Union, AFL-CIO v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1289 (6th Cir. 1990); *see also United States v. Cunningham*, 679 F.3d 355, 375 (6th Cir. 2012) ("[I]n every case[,] application of a legal principle turns on the presence of particular facts.") (citation and quotation marks omitted).  In other words, we are charged with "considering not only how well-established is the general legal principle involved but also how precisely the facts coincide with the cases applying that principle."  *United States v. Savoca*, 761 F.2d 292, 298 n.10 (6th Cir. 1985).  In the instant appeal, the only cases propounding the principle enunciated in *Sherer*, including *Sherer* itself, are distinguishable on the facts.  Thus, *Sherer*'s holding carries little force to the extent that it fails to account for the unique facts before us.

Further, the dissent's assertion that "the start-and-stop plan did not prevent Brown from moving to dismiss after the 70th day of his STA clock," (Dis. 3), ignores the record before us.

Based on the district court's adamant and consistent (and erroneous) rejection of Brown's STA objections prior to the 70-day deadline, Brown had no reason to believe that the district court would entertain, let alone grant, a motion to dismiss the indictment filed on or after September 16, 2014. *See Douglas v. Alabama*, 380 U.S. 415, 422 (1965) ("No legitimate state interest would have been served by requiring repetition of a patently futile objection, already thrice rejected, in a situation in which repeated objection might well affront the court"); *see also Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1502 n.3 (10th Cir. 1984) (excusing the appellant's technical non-compliance with Federal Rule of Civil Procedure 51 on the grounds that the district court had rejected the appellant's arguments "at least four times" previously, the appellant's "position had been previously made clear to the court[,] and it was plain that further objection would have been unavailing"); *Rummel v. Estelle*, 587 F.2d 651, 653–54 (5th Cir. 1978) (finding that the petitioner's argument was not barred by the contemporaneous objection rule because the state court had "repeatedly rejected" the argument and it was unclear "how any state interest would be served by demanding that [the petitioner] make a futile gesture at his trial"). In light of the district court's repeated and explicit rejection of his arguments, and absent the impending edict from *Sherer*, we see no reason to demand that Brown make such a fruitless gesture in order to preserve his STA claim.

The district court claimed that trial had begun on September 8, 2014. It made this representation despite taking a recess that delayed preliminary instructions and opening statements until September 22. Although it was clear to Brown that the district court was creating unwarranted delay through its use of the start-and-stop plan, we do not think it was clear, on the facts of this case, when Brown was required to move to dismiss the indictment. By objecting to this course of action at the September 8 pretrial conference, Brown opposed the delay of trial at what appeared to be the last possible moment: before trial "commenced" with voir dire. *See Reply Br.* at 29. Accordingly, we conclude that *Sherer* is distinguishable because it did not involve, and does not account for, the court-created confusion about when a defendant must raise his STA claim that we (and Brown) must contend with in this case.

Another consideration favoring relief is the time at which *Sherer* was decided— October 22, 2014—a month after Brown was tried and convicted of four counts of drug

distribution.**14**  *Sherer* relied on two extra-jurisdictional cases from 1991 and 1989 to conclude that "a motion for dismissal [under the Speedy Trial Act] is effective only for periods of time which antedate [its] filing."  770 F.3d at 411 (citation omitted).  In light of the STA's silence as to when a § 3162(a)(2) motion must be filed (apart from "prior to trial"), and the lack of definitive authority in our circuit, the *Sherer* Court aligned itself with the *Connor* and *Wirsing* courts in finding that such a motion can be effective only if it is filed *after* the 70-day deadline has elapsed.  *Id.*  Although we do not dispute this holding, we find it highly doubtful that either Brown or his attorney could have anticipated the obligation it placed on them a month before *Sherer* was decided.  *See United States v. Vonner*, 516 F.3d 382, 396 (6th Cir. 2008) (Clay, J., dissenting) (noting that in light of when defendant's case was decided in relation to the development of the law, subjecting defendant to a heightened standard of review based on "his failure to make an objection that he could not have known he needed to make[,] [wa]s inconsistent with the most basic principles of fairness and due process").  Brown raised his oral objections to the start-and-stop plan prior to trial.  By doing so, he complied with the letter of § 3162(a)(2), the only binding authority he could look to before this Court decided *Sherer*.  On the peculiar and narrow facts of this case, chiefly, the confusion created by the district court and the ambiguity existing in the law prior to Brown's trial, we hold that *Sherer* does not control and did not preclude Brown from effectively moving to dismiss the indictment based on the STA violation.

Because we find that the district court's start-and-stop plan violated the STA, Brown's oral objections at the September 8 pretrial conference satisfied § 3162(a)(2)'s motion requirement, and *Sherer* does not control on the narrow facts of this case, we hereby **VACATE** Brown's convictions at trial based on the STA violation and **REMAND** to the district court for a determination as to whether the dismissal of the indictment should be with or without prejudice.  *See Crane*, 776 F.2d at 607; *Richmond*, 735 F.2d at 217.

---

**14**The dissent minimizes the importance of the fact that we decided *Sherer* only after Brown was tried and found guilty.  (Dis. 4).  However, this argument ignores the general hesitance on the part of the trial courts to undo jury verdicts, *see, e.g.*, *MAR Oil Co. v. Korpan*, No. 3:11CV1261, 2016 WL 411010, at *3 (N.D. Ohio Feb. 3, 2016); *United States v. Urena*, 73 F. Supp. 3d 291, 304–05 (S.D.N.Y. 2014); *Rasic v. City of Northlake*, No. 08C104, 2010 WL 3365918, at *8 (N.D. Ill. Aug. 24, 2010), which was no doubt amplified in this case because the impetus for a new trial was generated by the district court's pre-trial errors rather than any happenings at the trial itself.

**D.     The District Court Did Not Err in Revoking Defendant's Supervised Release**

Brown asserts that if we vacate his trial convictions based on the STA violation, we must also vacate the district court's revocation of his supervised release (and, presumably, the imposition of a 24-month sentence). *Appellant's Br.* at 4, 57.  He bases this argument on the assertion that apart from his convictions at trial, the district court "found no other basis for a supervised release violation." *Id.* at 4.

Notably, Brown fails to cite, and we have not found, case law from any circuit supporting Brown's apparent position that vacating a defendant's sentence *automatically* requires vacating any additional sentence arising from the revocation of the defendant's supervised release.  Brown also fails to provide a substantive argument as to why we should vacate his supervised release sentence merely because we find reason to vacate his separate, drug-conviction sentence on STA grounds.  "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" and "'it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.'" *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999)) (alterations omitted); *see also White Oak Prop. Dev., LLC v. Washington Twp., Ohio*, 606 F.3d 842, 850 (6th Cir. 2010) ("[The appellant's] discussion is perfunctory, and we hold that the issue is forfeited." (citation omitted)).  Because Brown's supervised release argument is perfunctory and unaccompanied by any legal support or developed argumentation from Brown, we deem this argument waived and **AFFIRM** the district court's revocation of Brown's supervised release and corresponding sentence.

### III.     The Ineffective Assistance Claim

We are granting Brown relief on his STA claim; thus, his ineffective assistance of counsel claim, which is predicated on the STA issue, is moot.  *See, e.g.*, *United States v. Jones*, 489 F.3d 243, 255 (6th Cir. 2007) ("Because we are granting Jones relief on his supervised-release and double-jeopardy claims, his ineffective assistance of counsel claims predicated on these two claims are moot.") (citing *United States v. Milledge*, 109 F.3d 312, 316 n.2 (6th Cir.

1997); *see also United States v. Jackson*, 244 F. App'x 727, 729 (6th Cir. 2007) ("Because the district court's error in treating the policy statements as mandatory requires remand for the imposition of a new sentence, we need not reach Jackson's argument that the district court erred in its application of the § 3553(a) factors in imposing this sentence. Similarly, inasmuch as Jackson's ineffective assistance of counsel argument relies only on his counsel's performance in relation to the sentencing process, that issue is moot."). Accordingly, we do not reach the merits of Brown's ineffective assistance claim.

## IV.    The Due Process Claim

Lastly, Brown argues that his "exclusion" from the September 3 and 4, 2014 teleconferences, wherein defense counsel, government counsel, and the court agreed to delay trial through a continuance and then through the start-and-stop plan, violated his constitutional "right to be present" at all critical stages of the proceedings against him under the Fifth Amendment's Due Process Clause and the Sixth Amendment's Confrontation Clause. *Appellant's Br.* at 42–43. Based on these alleged constitutional violations, Brown requests that we "reverse [his] conviction[s] and order a new trial." *Id.* at 42. Because this constitutional claim essentially seeks the same relief as we have already granted based on the STA violation, we do not reach the merits of this claim.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's revocation of Brown's supervised release, **VACATE** Brown's convictions at trial based on the Speedy Trial Act violation, and **REMAND** to the district court for a determination as to whether the indictment should be dismissed with or without prejudice based on the factors enumerated under 18 U.S.C. § 3162(a)(2).

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part. My disagreement with the generally well-reasoned majority opinion is narrow but consequential. I agree that Brown's Speedy Trial Act (STA) rights were violated (Maj. Op. at 11–29), and that the district court did not err in concluding that Brown violated his supervised release (Maj. Op. at 38). Accordingly, I concur in Parts II.A. and II.D. of the majority opinion. I also agree with the general principle that an oral motion to dismiss comports with the requirements of 18 U.S.C. § 3162(a)(2). But because Brown's objection to the continuance of his trial failed to comply with binding circuit precedent, I am of the opinion that Brown's STA claim fails.

**A.      Did Brown waive his STA claim by not moving to dismiss the indictment?**

For the reasons set forth in the majority opinion, I believe that an oral motion to dismiss the indictment is sufficient to comply with the STA's provision requiring that the dismissal of the indictment be based "on motion of the defendant." 18 U.S.C. § 3162(a)(2). The problem here is that Brown never in fact made any such motion. He simply objected to the court's start-and-stop solution to the STA's 70-day deadline, but without ever moving to dismiss for that reason.

Based on the skeletal reasoning in *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997), the majority concludes that Brown's oral objection to continuing the trial was equivalent to an oral motion to dismiss under § 3162(a)(2). (Maj. Op. at 29–33) I have doubts as to the soundness of that decision, but I see no reason to pursue the issue because, in my opinion, there is a more clear-cut basis on which to resolve this case. Accordingly, I will assume without deciding that Brown's oral objection to the district court's start-and-stop plan constituted an oral motion to dismiss the indictment.

**B.** **Brown waived his STA claim under *Sherer***

The clear-cut basis for resolving this case, in my opinion, is premised on this court's decision in *United States v. Sherer*, 770 F.3d 407 (6th Cir. 2014). In *Sherer*, the defendant moved to dismiss his indictment on the 57th day of his STA clock on the ground that his trial, which was scheduled to begin approximately two months later, would commence after the 70th day. *Id.* at 411. Heeding the wisdom of other courts, *Sherer* held that "a motion for dismissal under the Speedy Trial Act is effective only for periods of time which antedate its filing." *Id.* (brackets omitted) (quoting *United States v. Connor*, 926 F.2d 81, 84 (1st Cir. 1991)). *Sherer* went on to conclude that the "proper course" when challenging a trial scheduled on a date that would violate the STA is to file a motion to dismiss "on day seventy-one (or later)." *Id.* By failing to move to dismiss after the 70th day, a defendant "waives his rights" under the STA. *Id.* This holding is binding precedent. *See Sierra Club v. Korleski*, 681 F.3d 342, 354 (6th Cir. 2012) ("Sixth Circuit Rule 206(c) is unequivocal: Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel." (citation omitted)).

Beyond being binding precedent, *Sherer*'s approach makes sense. A defendant's STA rights have not been violated until after the 70th day has passed because the STA allows for trial to begin as late as the 70th day. *See* 18 U.S.C. § 3161(c)(1). This means that there is no injury for a court to redress until the 70th day has passed without the defendant's trial commencing. The rule in *Sherer* also protects against certain legal oddities. For instance, *Sherer* noted that the Supreme Court has held "that *any* pretrial motion—even the defendant's motion to dismiss under the Speedy Trial Act—stops the statutory clock." 770 F.3d at 411 (emphasis in original) (citing *United States v. Tinklenberg*, 131 S. Ct. 2007, 2016 (2011)). Without the rule in *Sherer*, a court could be confronted with the anomaly of a trial date that would have otherwise violated the STA except for the defendant filing a motion to dismiss before the 71st day, thereby tolling the STA clock. The waiver rule that *Sherer* lays down is therefore rational, in addition to being binding precedent.

But the majority attempts to distinguish *Sherer* from the present case on two grounds. First, the majority notes that *Sherer* and the cases it cited for support did not involve start-and-

stop plans.   (Maj. Op. at 34–35)   This indubitable fact, however, is a distinction without a difference.   Nothing in *Sherer* indicates that its conclusion would have been different had it confronted a start-and-stop plan.   Moreover, *Sherer*'s binding effect is independent of the facts underlying the cases that it cited for support.

The majority clarifies its quibble with the factual differences between *Sherer* and the present case by contending that here, unlike in *Sherer*, the district court's start-and-stop plan imposed "a court-created obstacle to moving to dismiss the indictment after the 70 days."  (Maj. Op. at 35)  Contrary to the majority's assertion, however, the start-and-stop plan did not prevent Brown from moving to dismiss after the 70th day of his STA clock.

A defendant waives a violation of his STA rights unless he "move[s] for dismissal prior to trial."  18 U.S.C. § 3162(a)(2).  Although voir dire is generally considered the start of trial for purposes of the STA, *see United States v. Scaife*, 749 F.2d 338, 343 (6th Cir. 1984) ("Under normal circumstances, a trial begins for purposes of the [STA] when the *voir dire* process begins."), this generality—like most generalities—has exceptions.  One such exception must be for situations, like the present case, where a start-and-stop plan violates the STA.

When a defendant alleges that a start-and-stop plan violates the spirit of the STA, he is essentially arguing that voir dire should not be deemed the start of his trial for STA purposes. Success on such a challenge necessarily means that, for STA purposes, the defendant's trial *did not begin* with voir dire.  Brown seeks to have it both ways by simultaneously contending that (1) voir dire did not commence his trial for the purpose of evaluating the merits of his STA claim, and (2) voir dire did commence his trial for the purpose of the STA's waiver provision, which purportedly prevented him from seeking dismissal after the 70th day.  He should not be allowed to prevail based on the simultaneous assertion of these two inconsistent positions.  I would therefore hold that, when a start-and-stop plan is deemed to violate the STA, the beginning of trial for the purpose of evaluating a defendant's potential waiver under 18 U.S.C. § 3162(a)(2) is the resumption of trial following the recess.  Accordingly, despite the majority's assertion to the contrary, nothing prevented Brown from moving to dismiss after the 70th day (i.e., after September 15, 2014) and before the opening statements scheduled for September 22, 2014.

The majority's second attempt to distinguish *Sherer* is based on the fact that *Sherer* was decided after the jury found Brown guilty. (Maj. Op. at 36–37) Although factually correct, the majority offers no explanation for why this leads to the inapplicability of *Sherer*'s holding to the present case, especially considering that the district court had not yet issued judgment when *Sherer* was decided. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final . . . ."). And even if *Sherer*'s holding were somehow not binding in the present case because *Sherer* was decided after the jury found Brown guilty, I would still apply the waiver rule to this case because, as explained above, the rationale underlying it is sound and persuasive.

The majority musters a sole dissenting opinion from an unrelated case for the proposition that applying *Sherer* to the present case would be unfair. (Maj. Op. at 37) Applying *Sherer*'s waiver rule to the present case is no more unfair, however, than its application to Sherer himself. And surely the majority would not dispute that Sherer was subject to the rule announced in his case. *See Harper*, 509 U.S. at 97–98 (holding that, unless the Supreme Court reserves the question of whether its holding should be applied to the parties before it, the presumption is that the holding applies to them).

To summarize, I am unpersuaded by the majority's attempts to distinguish *Sherer* from the present case. I would instead apply *Sherer* and hold that, when a start-and-stop plan violates the STA, a defendant waives his STA rights unless his motion to dismiss the indictment occurs both (1) after the 70th day of the STA clock, and (2) prior to the resumption of trial following the recess that violates the STA.

Turning to the application of *Sherer* in the present case, the parties do not dispute that the 70th day of the STA clock occurred on September 15, 2014. (Maj. Op. at 11 n.5) Accordingly, per *Sherer*, any motion to dismiss under the STA made prior to September 16, 2014 was

ineffective. *See* 770 F.3d at 411. Brown made his oral objections on September 8, 2014. (Maj. Op. at 7–9) Even assuming without deciding that these objections constituted an oral motion to dismiss, the record is devoid of any evidence that either Brown or his defense counsel moved for dismissal under the STA between September 16, 2014 and the resumption of trial on September 22, 2014. Indeed, there is no evidence that a motion to dismiss under the STA was filed at any time after September 15, 2014. Brown has therefore waived his STA rights. *See* 18 U.S.C. § 3162(a)(2); *Sherer*, 770 F.3d at 411.

**C.      Brown's claim of ineffective assistance of counsel is not adequately developed for review on direct appeal**

Because I conclude that Brown's STA claim fails on procedural grounds, I will now turn to his two alternative arguments for relief that are not addressed by the majority opinion. The first such alternative argument is an ineffective-assistance-of-counsel claim based on the failure of Brown's counsel to seek dismissal because of the alleged STA violation. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that a defendant is denied his Sixth Amendment right to the effective assistance of counsel when (1) his "counsel's performance was deficient," and (2) the "deficient performance prejudiced the defense").

There is a strong preference in favor of not addressing ineffective-assistance-of-counsel claims on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."); *United States v. Jones*, 489 F.3d 243, 255 (6th Cir. 2007) (noting that this circuit "ordinarily will not rule on ineffective assistance of counsel claims raised on direct appeal because the record has not been sufficiently developed to review such claims").

Because a district court has the option to dismiss an indictment without prejudice to remedy an STA violation, *see* 18 U.S.C. § 3162(a)(2), the record is not adequately developed to address whether Brown's ineffective-assistance-of-counsel claim satisfies the prejudice prong of *Strickland*. *See United States v. Jackson*, 22 F. App'x 396, 398 (6th Cir. 2001) (denying a defendant's ineffective-assistance-of-counsel claim based on his counsel's failure to raise an STA violation because the defendant had "not demonstrated a reasonable probability that the district court would have dismissed the indictment with prejudice"). I would therefore deny

Brown's ineffective-assistance-of-counsel claim without prejudice and allow him to bring it in a petition under 28 U.S.C. § 2255.

**D.      Brown's claim regarding his exclusion from the teleconferences fails**

Brown's second alternative argument is that his exclusion from the teleconference on September 3 and 4, 2014 violated his rights under the Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment.  He concedes, however, that this claim is subject to review under the plain-error standard because defense counsel did not object to Brown's absence.  *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) ("Plain error review applies even if the forfeited assignment of error is a constitutional error.").

"To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings."  *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006) (quoting *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006)).  A defendant must satisfy each of the four distinct analyses of the plain-error inquiry in order to prevail on a forfeited claim.  *See United States v. Sharp*, 442 F.3d 946, 949–50 (6th Cir. 2006).

"[A] defendant has a due process right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge."  *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam) (citation and internal quotation marks omitted).  This right, however, is not absolute.  *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (noting that "a defendant's right to be present at every stage of trial is not absolute").  "The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."  *Gagnon*, 470 U.S. at 526 (brackets and citation omitted).

Even if the district court did err in conducting the teleconferences in Brown's absence, any alleged error was not obvious or clear.  "An error is 'plain' when, at a minimum, it is 'clear

under current law.'" *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).  "A lack of binding case law that answers the question presented" precludes a "finding of plain error." *Id.*  Brown has cited no cases, nor am I aware of any, holding that a defendant has a constitutional right to be present at a pretrial conference discussing (1) the trial schedule, (2) a possible continuance, or (3) a potential STA violation.  Accordingly, even assuming without deciding that the district court erred, the error was not plain.  Brown's claim regarding his exclusion from the teleconferences therefore fails.

In conclusion, I can understand why the majority might think that the application of *Sherer* is unfair to Brown.  (Maj. Op. at 36–37)  In our constitutional system, however, judges are not charged with simply dispensing justice in some abstract, unanchored sense.  We are permitted to administer our own conception of justice only if it comports with the law.  *See United States v. Mize*, Nos. 13-6558, 13-6559, 13-6560, 2016 WL 640636, at *12 (6th Cir. Feb. 18, 2016) (Keith, J., dissenting) ("At first blush, it may appear that the majority reaches a 'noble' outcome because the convictions of three defendants are reversed.  However, courts should be ever mindful that true justice requires consistent application of the law for everyone.").  Because *Sherer* controls the outcome of this case, I cannot join the majority in full.  I would therefore affirm the judgment of the district court.