NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0018n.06

No. 17-2261

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| WILLIAM S. COOPER, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |
| | ) |
| Defendant-Appellee. | ) |
| | ) |

FILED
Jan 14, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

---

**BEFORE: SILER, COOK, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff William S. Cooper appeals the district court's order denying his motion for summary judgment and granting defendant Portfolio Recovery Associates' (PRA) motion for summary judgment in this action alleging violations of the Fair Debt Collection Practices Act (FDCPA), the Michigan Collection Practices Act (MCPA), and Michigan tort law. We affirm.

**I. Background**

Cooper received an initial collection letter from PRA, dated July 13, 2015, stating that he owed $3,177.19. The letter named U.S. Bank National Association ("U.S. Bank") as the original creditor and seller of the debt to PRA and provided an account number as well as contact information. Cooper responded by letter dated July 23, 2015, requesting verification of the debt, including information about PRA and its authority to collect the debt; when PRA acquired the

debt, from whom, and the balance when acquired; whether amounts had accrued since that time and the authority for any such charges; the original creditor, including any name by which it might be known if different from its official name; the original account number, a copy of the last billing statement sent by the original creditor, and the date of the last payment made on the account; and a copy of the written agreement that created "the original requirement to pay." R. 1-1, PID 7–8. Cooper's letter stated that he "asked for this information because [he] ha[d] some questions," and requested that PRA "treat this debt as being in dispute." R. 1-1, PID 8.

PRA responded by letter dated August 10, 2015.[1] PRA's letter stated that the original creditor was U.S. Bank and that the account number ended in 0104. The letter also stated that the account was in the name of "William S. Cooper 2," whose social security number ended with 8602. R. 10-2, PID 92. The letter further noted that the account was opened on January 1, 2008, that $3,117.19 was due as of June 17, 2015, when PRA acquired the debt, and that no interest or other fees had accumulated since that date. The letter did not include a copy of an agreement between Cooper and U.S. Bank, and did not include any account statements. The letter enclosed an "identity theft affidavit" to be used if the debt was the result of identity theft. R. 10-2, PID 96–97.

Also on August 10, 2015, Cooper sent a second letter to PRA. That letter stated that PRA had contacted Cooper "by phone on three occasions since [it] received [his] first request for verification" and that these communications were "in violation of the Federal Fair Debt Collections Practices Act."[2] R. 1-1, PID 13. Cooper requested "proof by mail that this debt belongs to me" and instructed PRA not to contact him by phone "until verification of this debt has been proven."

---

[1] There is some question whether Cooper received this letter when first sent.

[2] Cooper made no allegations concerning these phone calls in his complaint, in his motion for summary judgment, or on appeal. In any event, these communications preceded Cooper's complaint by more than the one-year limitations period. *See* 15 U.S.C. § 1692k(d).

R. 1-1, PID 13–14.  Cooper then reiterated the requests contained in his first letter and, using bold-faced and underlined font, emphasized two of his requests: for "a copy of the original written agreement with [his] signature and date that created the contract," and a "copy of the last billing statement sent to [him] by the original creditor."  R. 1-1, PID 13–14.

PRA responded to Cooper's second letter three days later, on August 13, 2015, stating that it had "obtained and reviewed the attached documents related to this account, which establish its validity," and that it had "completed [its] investigation of [Cooper's] dispute."  R. 10-3, PID 99. The letter attached three account statements dated April 2013, January 2014, and February 2014. The statements all had a Comerica heading,[3] were in the name of "William S. Cooper 2," and had an account number ending in 0104.  R.10-3, PID 101–109.  The April 2013 statement indicated that the account holder had made the minimum monthly payment on the account.

PRA sent Cooper two more letters, each dated August 20, 2015.  The first was identical to the letter dated August 10, 2015.  The second stated that PRA had "already responded to a previous dispute substantially the same as your present dispute" and that "[b]ecause [the present dispute] alleges no new facts and includes no new information in which to form the basis for a new investigation, we will not be conducting another investigation of the dispute."  R. 1-1, PID 17. The letter concluded by noting that PRA "considers this matter closed."  *Id.*

On August 25, 2015, Cooper sent PRA a third request for verification.  He acknowledged receipt of PRA's letters dated August 10 and August 13, 2015, and requested "verification of this debt which shows my signature on the original contract, receipts, and at least 1 year of credit card

---

[3] Neither PRA's letter nor the attachments explained the connection between Comerica Bank and U.S. Bank, the original creditor.  During the litigation PRA submitted evidence explaining that U.S. Bank does business under the name of Elan Financial Services, which issues credit cards with Comerica Bank branding.

statements." R. 1-1, PID 15. Cooper stated that the documents provided by PRA do "not contain my signature, and as such, ha[ve] nothing to do with me," and that the account at issue "is not my account." R. 1-1, PID 15.

The next communication between the parties is a letter from PRA dated July 15, 2016. This letter is identical to one of PRA's letters dated August 20, 2015: it noted that PRA had "already responded to a previous dispute substantially the same as your present dispute" and that, "because [the present dispute] alleges no new facts and includes no new information in which [sic] to form the basis for a new investigation, we will not be conducting another investigation of the dispute." R. 1-1, PID 16.

Between September 2015 and August 2016, PRA shared information concerning Cooper's alleged debt with credit reporting agencies but noted that Cooper disputed the debt. PRA did not further attempt to collect the debt. On August 16, 2016, PRA requested that the credit reporting agencies delete the information from Cooper's credit report.

On August 15, 2016, Cooper filed a complaint asserting three claims: (1) that PRA violated the FDCPA both by failing to "properly and completely validate the alleged debt upon dispute" and by employing "false, misleading, and deceptive practices in connection of [sic] the debt, utilizing a fraudulent document violating 15 U.S.C. § 1692e," R. 1, PID 3–4; (2) that PRA violated the MCPA in the same manner; and (3) that PRA "made a material misrepresentation about the existence of a debt" that constituted fraud under Michigan common law, R. 1, PID 4–5.

At a status conference on January 25, 2017, the district court established a briefing schedule for PRA's motion for summary judgment. PRA moved for summary judgment on all claims shortly after, and Cooper filed an answer and cross-motion in May. The district court did not stay discovery while the parties were briefing their motions. On April 28, 2017, Cooper filed a motion

to compel PRA to comply with certain of his discovery requests. The district court held a telephonic status conference on May 8, 2017, after which the parties stipulated to the terms of a protective order. Certain discovery disputes remained outstanding by the time the summary judgment motions were fully briefed.

The district court heard oral argument on August 30, 2017. At the start of the hearing, the district court stated that it appeared that Cooper's pending discovery motion was mooted by the fully briefed motions for summary judgment; neither party objected. During oral argument, Cooper's counsel briefly mentioned in response to a question from the district court that he had "no opportunity to do any more discovery," but he neither requested additional time to complete discovery nor argued that the record was inadequate. R. 32, PID 791. At the close of argument, the district court directed the parties to file proposed orders for resolution of their competing summary judgment motions; the court further noted that it would "give [each party] ten days to file whatever [they] want." R. 32, PID 799. PRA filed a supplemental brief in support of its motion for summary judgment in which it highlighted certain facts in the record; Cooper submitted no additional filings. Neither party appears to have submitted a proposed order.

In a memorandum and order dated September 15, 2017, the district court granted PRA's motion for summary judgment and denied Cooper's cross-motion. The district court first found that Cooper's FDCPA verification claim failed because PRA had provided sufficient verification for Cooper to determine that the debt was not his. The district court next found that Cooper's FDCPA deceptive-practices claim failed because there was no genuine issue regarding whether PRA had falsified any documents. The district court appears to have found that Cooper's claims under the MCPA and under Michigan common law failed for the same reason, but the court did not engage in a separate discussion of these claims.

## II. Discussion

We review a district court's grant of summary judgment de novo. *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018) (citing *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017)). Summary judgment is proper where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000)).

Cooper advances claims under the FDCPA, the MCPA, and Michigan common law. Before we address those claims, however, we note that Cooper begins his brief by stating that PRA's "counsel did its best to obstruct discovery." Appellant Br. at 6. Cooper goes on to describe the parties' discovery disputes. Although he does not clearly articulate an argument, Cooper appears to suggest that we should reverse because he was not afforded an adequate opportunity to conduct discovery. However, Cooper did not object to the district court's statement "I take it that [the motions and briefs] moot[] the motion for discovery, and the docket will so reflect." *See* R. 32, PID 760. Nor did Cooper invoke Fed. R. Civ. P. 56(d), which provides that the nonmoving party may ask the court to allow time for further discovery before ruling on the motion.

Thus, to the extent that Cooper intends to argue that PRA's motion for summary judgment was improper because the factual record was not properly developed, that argument fails because (a) Cooper conceded that the discovery disputes were mooted by the fully briefed motions; (b) Cooper never advanced this argument before the district court; and (c) the argument on appeal is "adverted to in a perfunctory manner, unaccompanied by [an] effort at developed argumentation"

and is therefore waived, *see United States v. Brown*, 819 F.3d 800, 829 (6th Cir. 2016) (quoting

*United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)).

We therefore proceed to a discussion of Cooper's claims.

**A. The Fair Debt Collection Practices Act**[4]

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses." 15 U.S.C. § 1692(e). "Congress designed the

[FDCPA] to 'eliminate the recurring problem of debt collectors dunning the wrong person or

attempting to collect debts which the consumer has already paid.'" *Fed. Home Loan Mortg. Corp.*

*v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (alterations in original) (quoting *Swanson v. S. Or.*

*Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

Section 1692e of the FDCPA states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

Section 1692g(b) of the FDCPA states:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or

---

[4] The parties appear to agree that PRA is a debt collector under the FDCPA, and we therefore do not discuss the issue.

name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b).

The FDCPA contains a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).

**B.  Allegations of Fraud and Fabrication**

At argument on the cross-motions for summary judgment, Cooper's counsel began, "Our case depends entirely on the fact that they submitted a falsely created document as verification" of the debt.  Similarly, Cooper's statement of issues on appeal and argument headings also focus on whether his affidavit and the irregularities he identified in the account statements precluded the grant of summary judgment to PRA on the issue whether PRA violated 15 U.S.C. § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Cooper's claim is premised on his allegation that PRA falsified the verification documents it provided to him.

In support of its motion for summary judgment, PRA submitted documents, including monthly account statements from January 2012 to February 2014 bearing Cooper's name and address,[5] together with a declaration by a U.S. Bank representative stating that the attached monthly account statements were exact duplicates of the originals.  PRA also submitted a Bill of Sale and Affidavit of Sale showing the June 17, 2015 sale of a number of charged-off accounts from U.S. Bank to PRA and the same U.S. Bank representative's declaration that the account in

---

[5] Among these statements were the three statements originally provided to Cooper in response to his request for verification.

Cooper's name was among the accounts sold. That same declaration further stated that on November 9, 2012, U.S. Bank received a request from Cooper to change his address to "25701 West 12 Mount, Apt. 802, Southfield, Michigan, 48034," and that account statements sent to that address were not returned as undeliverable. R. 23-2, PID 528. PRA also submitted a fax from the United States Postal Service stating that Cooper previously lived at "25701 West 12 Mount, Apt. 802, Southfield, Michigan, 48034," R. 23-3, PID 634, as well as LexisNexis records connecting Cooper to that address. PRA additionally submitted a declaration from a U.S. Bank representative explaining that although the account was closed in March 2009 and no further charges were permitted, payments on the account were made until October 2014.[6] Finally, PRA submitted a declaration from a U.S. Bank representative and a letter from an attorney on behalf of Comerica Bank. These documents explain that U.S. Bank does business under the name of Elan Financial Services, and that Elan Financial Services issues credit cards with Comerica Bank branding. PRA argued that these documents established the absence of a genuine issue concerning whether it falsified the verification documents.

Cooper responded that the documents themselves, together with his sworn statement and testimony that he never opened an account with any of the entities associated with the debt, that he never received any statements concerning the account, that he never made any payments on the account, and that he never resided on "Mount" street in Southfield, Michigan, established a genuine issue regarding the authenticity or falsity of the documents. Cooper additionally presented his Transunion credit report from June 9, 2015, which did not list the account, and a Consent Order entered pursuant to a stipulation between PRA and the Consumer Financial Protection Bureau.

---

[6] We note that the remaining documents in the record, including the account statements attached to the declaration, indicate that the last payment was made in October 2013.

Cooper pointed out certain irregularities in the account statements as evidence of fabrication: the statements have inconsistent typeface and spacing; his first name is misspelled and there is a "2" after his name rather than the "II" he uses; and the statements are addressed to him at "25701 West 12 Mount"—a non-existent address—when he in fact lived at "25701 West 12 Mile."

Cooper relied on the Consent Order to show that PRA had a "pattern and practice . . . to contact alleged debtors without sufficient investigation," R. 19, PID 394, and to support its collection efforts with affidavits from PRA employees that falsely claim to have personal knowledge of records and documents. Cooper further observes that it is highly unlikely that a person of his age with his credit history would have been given the credit card at issue with its $5000 credit limit. He adds that "[a] simple Google search of PRA revealed multiple instances where parties had responded to PRA's 'identity theft' affidavit and then were presented with documentary evidence that had been 'backfilled' with the data supplied with the identity theft affidavits," and "substantial cases and testimonials appeared online supporting the notion that PRA was not to be trusted and had been accused of employing unlawful tactics to collect funds." Appellant Br. at 3-4.

On appeal, Cooper argues that the record evidence is sufficient to establish a genuine issue whether PRA falsified the documents. We disagree. To be sure, the record demonstrates a genuine issue regarding whether Cooper opened the account. But Cooper's claims turn on whether PRA made deceptive or misleading statements by providing him with fabricated documents. In order to survive summary judgment, Cooper had to provide more than "a mere scintilla of evidence" in support of that allegation. *See Thomas*, 398 F.3d at 429 (internal quotations and alterations omitted).

Cooper has presented no evidence of fraud or fabrication by PRA. Assuming, as we must, that Cooper's testimony is accurate and that he never opened the account, it does not follow that PRA fabricated or falsified the account statements or information. Although Cooper has identified irregularities in the documents that he contends are evidence of falsification, these irregularities do not support an inference that PRA fabricated the statements. Yes, the documents list the account holder as "William S. Cooper 2" rather than as "William S. Cooper II"—Cooper's preferred styling—and refer to a non-existent "West 12 Mount" address; but this is not evidence that PRA falsified or fabricated the account statements and that the statements were not simply inaccurate or based on information provided by someone else. This is especially so in the face of the declaration of a U.S. Bank employee that the account statements at issue are exact copies of the statements in U.S. Bank's records. Nor, without more, does the absence of the account on Cooper's credit report create a genuine issue whether the documents, as distinguished from the account, were fraudulent.

The U.S. Bank declaration also makes it difficult to draw inferences from the Consent Order, as Cooper urges. The practice described in the Order involved PRA's employees' activities. Here, the declaration attesting to the accuracy of the statements came from a third party. To the extent Cooper implies that the affidavits of U.S. Bank representatives submitted by PRA were fraudulent, there is no support for such an inference. In order to accept Cooper's proffered explanation, a factfinder would be required to believe not only that PRA falsified the verification documents, but also that U.S. Bank colluded with PRA to produce a set of falsified documents.[7] In light of the absence of any evidence to support such a fraudulent scheme—Cooper did not

---

[7] We reject Cooper's suggestion that evidence of the statements' invalidity or fabrication can be found in the fact that the affidavits of U.S. Bank employees originated in St. Louis when Elan's records are based in Minneapolis.

depose a U.S. Bank representative or otherwise establish that the account statements were not consistent with normal operations—Cooper's testimony that he never opened the account, and the irregularities identified, do not present a genuine issue regarding whether PRA provided fabricated or fraudulent documents. Cooper has simply established a genuine issue whether he is responsible for the underlying debt. Thus, we affirm the districts court's dismissal of the FDCPA deceptive-practices claim, the MCPA claim[8], and the Michigan fraud claim.[9]

## C. Verification Claim

It is not clear which aspect or aspects of the district court's ruling on the verification claim Cooper challenges on appeal. His statement of the issue speaks only to the fraud aspects of his

---

[8] Cooper's MCPA argument is brief:

> Violation of the MCPA turns on whether the documents sent by Defendant to Plaintiff constituted a false and misleading act, much like the FDCPA. Accordingly, because there are issues of material fact remaining regarding whether the documents sent to Plaintiff are fraudulent, issues of material fact remain as to whether the MPCA was equally violated.

Assuming the MCPA applies to PRA, which is not a licensee collecting a third-party's debt, *see* MCL §§ 339.901(1)(b), 339.904(1), and 339.915, there is no genuine issue whether sending the U.S. Bank statements constituted a false and misleading act.

[9] To prove simple fraud under Michigan law,

> a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

*Roberts v. Saffell*, 760 N.W.2d 715, 719 (Mich. Ct. App. 2008), *aff'd*, 766 N.W.2d 288 (Mich. 2009). In addition to the failures previously discussed, Cooper fails to explain how he acted in reliance on the alleged false representations or suffered any resulting injury.

claims.[10] Two of his three FDCPA-related argument headings also address fraud.[11] The remaining FDCPA argument addressed fraud in the body of the argument. Argument I asks "Did Defendant shift the burden of proof on the summary judgment motion?" and "If so, did Plaintiff sustain its burden of proof?" Cooper introduces his subheadings with the statement "Defendant had the initial burden of making a *prima facie* showing that the documents it sent Plaintiff were *not* fraudulent documents, as alleged." Appellant Br. at 11.

Isolated statements in Cooper's brief refer to PRA's failure to respond to Cooper's verification request with the original signed application or contract, a full set of account statements, and an explanation of the connection between Comerica, U.S. Bank and Elan. However, Cooper fails to develop these isolated factual assertions into reasoned arguments under controlling case law, and it is not for us to flesh out his arguments for him. *See United States v. Calvetti*, 836 F.3d 654, 662 n.1 (6th Cir. 2016).[12]

For the reasons stated, we affirm the district court's grant of summary judgment to PRA and denial of summary judgment for Cooper.

---

[10] Cooper's statement of the issue asks "[w]hether the district court erred by: a. limiting its findings to adequacy of verification within the meaning of the FDCPA and MCPA and not the underlying fraud; b. extrapolating its standard regarding adequacy of verification to state action for fraud." Appellant Br. at 1.

[11] Argument II asks, "Does supplying a fraudulent document as validation of a debt constitute a false, deceptive or misleading representation within the meaning of the FDCPA?" Appellant Br. at 22. Argument III asks, "Does supplying a fraudulent document satisfy the *Haddad* standard and the *least sophisticated consumer standard."* *Id.* at 23.

[12] We note that Cooper also fails to respond to PRA's argument that it could not have violated § 1692g(b) because it took no action to collect the debt after Cooper's August 10, 2015 letter requesting verification.